85 F.2d 42 (1936)
In re PARAMOUNT PUBLIX CORPORATION.
GREENBERG
v.
PARAMOUNT PICTURES, Inc.
No. 362.
Circuit Court of Appeals, Second Circuit.
July 20, 1936.
*43 Percival E. Jackson, of New York City, for appellant.
Root, Clark, Buckner & Ballantine, of New York City (Henry J. Friendly, of New York City, of counsel), for appellee.
Before L. HAND, SWAN, and CHASE, Circuit Judges.
L. HAND, Circuit Judge.
Claimant appeals from an order in bankruptcy allowing his claim against the debtor corporation in reörganization at a less sum than he demanded. He was in the debtor's employ and was discharged on January 3, 1933. On the 23d of that month he sued it in the state court for $38,100, that being the amount of his future salary. On February 10 the debtor appeared in the action  although receivers had been appointed for it on January 26  and filed an answer, which was, however, stricken out on March 9. An inquest was had on the 29th, and on April 17 judgment was entered for the claimant in the sum of $33,000 and interest, $653.10. Meanwhile on March 14 the debtor had been adjudicated a voluntary bankrupt and trustees were appointed on April 17. The claimant filed a proof of claim in bankruptcy, based upon the judgment in the sum of $33,653.10; but nothing appears to have been done towards allowance of the claim, and more than a year later, on June 7 and 8, 1934, involuntary petitions for reörganization were filed against it, which the court approved on the 16th. Reörganization trustees were then appointed, who objected to the claim because no allowance had been made for the claimant's earnings until the end of the term of his employment, July 31, 1935. The special master, to whom the issues were referred, refused to accept the judgment as a liquidation of the claim, and after deducting the claimant's earnings, audited it at $26,290.22. The interest upon this from the date of the breach was $2,150, which he disallowed. This order the judge confirmed and from it the appeal has been taken. The court has approved a plan of reörganization under which all creditors got 50 per cent. of their claims in debentures, and the balance in preferred stock.
In spite of the reservation in Riehle v. Margolies, 279 U.S. 218, 219, in the note to page 228, 49 S.Ct. 310, 314, 73 L.Ed. 669, we take it as law that a judgment obtained after bankruptcy petition filed does not liquidate a claim for purposes of distribution. In re Brady Foundry Co., 3 F.(2d) 437 (C.C.A.7); In re Barrett & Co. (D.C.) 27 F.(2d) 159, affirmed 29 F.(2d) 737 (C.C.A.5); In re Hoey, Tilden & Co. (D.C.) 292 F. 269; In re Service Appliance Co. (D.C.) 39 F.(2d) 632; In re Kenwood Storage & Warehouse Corporation (D.C.) 4 F.Supp. 561. The fact that section 63b, Bankr.Act (11 U.S.C.A. § 103 (b), allows unliquidated claims to be liquidated "in such manner as it" (the court) "may direct," would seem to give it control over liquidation. See, also, section 11 and section 57d (11 U.S.C.A. §§ 29, 93 (d). Therefore, except for the reörganization proceeding, the judgment creditor would have had to prove his claim before the referee, or in some other way chosen by the court under section 63b. The question is whether a claim in reörganization, based upon a judgment obtained pending the bankruptcy, *44 is in a different class. If all the creditors are to be paid in full, there would be more ground for saying so; the debtor had its opportunity to contest the action and chose to allow a default, and it alone has any interest in the reörganization. But where, as here, creditors must abate their claims, the result is to introduce among them an unwarranted, or overblown, claim which they have never had any chance to contest. The bankruptcy trustee has no apparent interest in doing so, for the outcome of the action concerns only the bankrupt; he should not be asked to divine the possibility of a future reörganization, and if he did, it would be an unreasonable imposition to require him to take measures against so remote a hazard. The claimant's argument is that subdivision (o) of section 77B (11 U.S.C.A. § 207 (o) requires us to decide otherwise; it says that "the rights and liabilities of creditors * * * shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved." This language accords with the last words of subdivision (k), § 77B (11 U.S.C.A. § 207 (k): "the date of the order approving the petition or answer * * * shall be taken to be the date of adjudication, and such order shall have the same consequences and effect as an order of adjudication." Even assuming arguendo  what is perhaps open to doubt  that in spite of this language the date of filing the reörganization petition, and not that of the order of approval, is the dividing line, the judgment at bar, obtained before the filing of the reörganization petition, would therefore be a good liquidation unless it makes a difference that the reörganization followed upon a bankruptcy.
Subdivision (a) of section 77B (11 U. S.C.A. § 207 (a) provides for three situations: "An original petition"; "an answer" in bankruptcy before adjudication; "a petition" before or after adjudication "in any proceeding pending in bankruptcy." Why the debtor should have the alternative of answer or petition before adjudication, or whether there is any but a nominal difference, we need not inquire. What is important is that "an original petition" is contrasted with a petition or answer in a "proceeding pending in bankruptcy." When either of these is so interposed, reörganization becomes an amplification or new end product of the original bankruptcy, just as though the bankrupt or the alleged bankrupt had proposed a composition, of which indeed reörganization is a variant and an outgrowth, and on the basis of which its constitutionality was upheld. Continental Illinois Nat. Bank v. Chicago, Rock Island & P. R. Co., 294 U.S. 648, 672-674, 55 S. Ct. 595, 79 L.Ed. 1110. The relevant date for all purposes would therefore normally be the filing of the bankruptcy, not of the reörganization, petition. We agree, however, that subdivision (o), because of the word "answer," if for no other reason, shows that this is not the case, and if it is to be read without condition the claimant is right. It is not unconditional in form; it begins: "In proceedings under this section and consistent with the provisions thereof." 11 U.S.C.A. § 207 (o). If this means no more than an admonition to make all "provisions" of the section fit together verbally, it adds nothing; courts must always do that. We are disposed to take it as being more than that; as circumscribing the subdivision by the scheme or general plan of the section as a whole.
There is one situation in which this clause must certainly create an implied exception. The section in several places makes it clear that preferences may be recovered in reörganization, although it is a little hard to see why, when the debtor is solvent. Section 60 (11 U.S.C.A. § 96) is expressly made applicable to reörganizations at the end of subdivision (b), § 77B (11 U.S.C.A. § 207 (b) and section 57g and sections 70a and 70e (11 U.S.C.A. §§ 93 (g), 110 (a, e) by subdivision (k), 11 U.S.C.A. § 207 (k). But if subdivision (o) governs preferences, all are validated which are made within four months of filing the bankruptcy petition and more than that time before filing the reörganization petition. That was certainly not intended; we have no doubt that such a result would not be "consistent with the provisions" of section 77B. The claimant answers that subdivision (i), 11 U.S.C.A. § 207 (i) preserves the right of the bankruptcy trustee in such a case. But the language there is very inept for such an effect: "If a receiver or trustee * * * of the property of a corporation has been appointed * * * the trustee * * * appointed under this section, or the debtor if no trustee is appointed, shall be * * * vested with title to such property." The natural meaning of these words is that the reörganization trustee gets the bankrupt's title, not its trustee's, especially as receivers are bulked with trustees. But even if that objection be *45 passed, when the reörganization petition is filed before adjudication there never can be a trustee (subdivision (a), § 77B (11 U.S. C.A. § 207 (a), or a title superior to that of the preferred creditors. The reörganization trustee must in that event rely upon his own title, and if subdivision (o) be taken literally he must date it from the filing of the reörganization petition at the earliest. The opportunity so opened for collusion between a debtor and a favored creditor is obvious, and although that can at times be detected by inquiry into the "good faith" of a voluntary petition, that will be no protection when the proceeding is involuntary. Furthermore, whatever may be thought of the title of the reörganization trustee to property preferentially transferred, nothing can help in the application of section 57g. If subdivision (o) is unconditional, all preferred creditors may prove without surrender who have not received preferences within four months of the reörganized petition.
It appears to us plain therefore that in this instance anyway the clause we have quoted has a real function. The argument goes no further, it is true, than to show that it comprises some exceptions which do not depend upon the text; it does not help us to decide whether a judgment which was not an estoppel at one stage of the proceeding shall later become so. We are, however, entitled to demand in the name of consistency that the proceeding shall not veer from side to side as it progresses towards a conclusion. After all, the purpose of consistency is that people may not be confused or misled, rather than the search for logical rectitude; and if the consequence of a literal reading of subdivision (o) is to betray an assurance which was inevitable during the earlier course of the proceeding, it is reasonable to say that it is inconsistent with the section as a whole to read it so. The bankruptcy proceeding is indeed truncated midway and not allowed to conclude as it began; but the graft does not make it a new growth from the root, and the result is certainly meant to be an organic whole. The proceeding cannot have such a unity if inconsistencies are allowed so productive of injustice as are possible under the claimant's reading; we think that the judge was right to disregard the judgment.
It has been our practice in equity to leave the allowance of interest even on legal claims to the discretion of the District Court. Pennsylvania Steel Co. v. New York City R. Co. (C.C.A.) 198 F. 778; Robertson v. Miller (C.C.A.) 286 F. 503, 509; Nolte v. Hudson Navigation Co. (C. C.A.) 8 F.(2d) 859. The doctrine that a promisor in default shall not be required to pay interest rests upon his inability to know how much to tender, and obtains when the liability resulting from the breach is practically unascertainable. An antinomy lurks in it at best, since the liability does not await liquidation but is absolute, and yet it is conditional qua complete restitution which includes interest. In the case at bar, when the debtor discharged the claimant, and the claimant chose to treat the discharge as a breach, an unconditional liability resulted at once for the whole future salary less future earnings; but since nobody knew how much he would earn, the debtor could tender nothing in performance. As time passed, however, this liability became progressively liquidated, so that when the trial took place it could be completely ascertained. In actions upon anticipatory breaches the court does not shut its eyes to what has passed since the breach, or confine itself to the half-lights which alone were originally available. New York Trust Co. v. Island Oil & Transport Corporation, 34 F.(2d) 653 (C.C.A.2); Oltarsh v. Bratter, 48 F.(2d) 567 (C.C.A.2). And it is for this reason that the master here properly computed the damages by using the claimant's actual earnings for the subtrahend, and not the forecasts to which he would have been limited, if the trial had taken place in January, 1933. Therefore, although the debtor never knew until July 31, 1935, the full amount of its liability, still it could have tendered an increasing proportion of it as the installments became due. The liability was, however, always single; the claimant by his election had converted it into that from a series of obligations. Having so converted it, may he insist upon interest calculated upon the theory of a series of installments? Logically he may not; practically we do not see why he should not. Complete restitution demands interest from the date of the breach; the promisor is let off only because of a tenderness to him, since he is thought to be practically unable to perform, which, as we have already said, is a concession against principle. There seems to be good warrant for withdrawing that concession in proportion as the ground for its creation ceases. For these reasons it was an abuse of discretion not to allow interest. *46 Strictly, the earnings should not be ratably apportioned, but should be credited as they were actually earned; but it seems hardly desirable to put the parties to another trial for differences which cannot be very great. Therefore we divide the earnings ratably over the period from January 1, 1933, to July 31, 1935. The deficiency on each installment will carry interest from the due date of that installment up to January 1, 1935. Any deficiencies thereafter of course carry no interest.
Order modified as to interest, and otherwise affirmed.