**WICKHAM CONTRACTING CO., INC., Ralph Perone, Plaintiffs–Appellees,**

v.

**LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendant–Appellant.**

No. 482, Docket 91–7713.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1991.

Decided Jan. 29, 1992.

Norman Rothfeld, New York City, for defendant-appellant.

Joseph E. Gulmi, New York City (Allan J. Parker, Shea & Gould, of counsel), for plaintiffs-appellees.

Before CARDAMONE, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Local No. 3 of the International Brotherhood of Electrical Workers ("union") appeals from a judgment of the United States District Court for the Southern District of New York (Mukasey, *J.*) awarding prejudgment interest on damages recovered by plaintiffs-appellees Wickham Contracting Co. and Ralph Perone (collectively, "Wickham"), as employers and former joint-venture partners. The damages were awarded under Section 303(b) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–197, which provides a civil remedy to employers sustaining damages from secondary strike activity by a labor organization. *See* 29 U.S.C. § 187.

The union contends that prejudgment interest is inappropriate in Section 303 cases because the LMRA, being silent on the subject of prejudgment interest, provides no "statutory authority" for such awards, and because the damages involved are unliquidated, or difficult to ascertain prior to judgment. The union further contends that, even if prejudgment interest may be awarded under Section 303, the district court erred in awarding interest in this particular case. We have not previously addressed the question of prejudgment interest under this provision of the LMRA. For the reasons that follow, we hold that an award of prejudgment interest under Section 303 is within the sound discretion of a district court, and that Judge Mukasey did not abuse his discretion in awarding interest in this case.

## BACKGROUND

The union represents electricians who are employed by contractors to perform

electrical construction work. Wickham was an electrical contractor. In early 1974, Wickham entered into contracts with the Board of Education of the City of New York under which Wickham was to perform electrical modernization and construction work at three New York City public schools, P.S. 8, P.S. 41, and the Tremont Early Childhood Center. Wickham's electricians were represented by Teamsters Local 363.

During the week of July 8, 1974, while Wickham's work on the schools was under way, the union caused its members to strike against all electrical contractors performing work for the Board of Education. The immediate goal of the strike was to force the Board of Education to cease doing business with Wickham. The ultimate goal of the strike was to oust the Teamsters from their position as representative of Wickham's electricians.

On July 22, 1974, the Board of Education issued stop work orders to every electrical contractor that did not have a collective bargaining agreement with the union, including Wickham. Wickham's work on the schools came to an immediate halt. Wickham commenced this civil suit against the union under Section 303(b) of the LMRA on July 29, 1974. At the same time, Wickham filed unfair labor practice charges with the NLRB.

The Board of Education rescinded its stop orders on August 6, 1974, although the union's walkout apparently continued until September 13, 1974, when a temporary restraining order was issued against the strike by the United States District Court for the Eastern District of New York. On September 19, 1974, the union lost a representation election to the Teamsters, and the NLRB certified the Teamsters as the bargaining representative of Wickham's electricians the following month.

On September 26, 1975, the NLRB found that the union had engaged in an unfair labor practice under Section 8(b)(4) of the National Labor Relations Act ("NLRA"), and issued a cease and desist order. The NLRB's determination and order were up-held by this Court the following year. *See NLRB v. Local 3, Int'l Bhd. of Elect. Workers*, 542 F.2d 860 (2d Cir.1976) (*"Wickham I"*). In the civil suit commenced by Wickham, a jury eventually found the union liable in 1982, and awarded $959,000 in damages under Section 303. We affirmed the jury's finding of liability, but remanded the case for a new trial on the amount of damages. *See Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21 (2d Cir.1983) (*"Wickham II"*).

The new damages trial was not held until April 1991. The jury returned an award of $41,000. At Wickham's request, Judge Mukasey awarded prejudgment interest on this amount accruing from September 1, 1975. The interest component amounted to $50,905, for a total award to Wickham of $91,905.

## DISCUSSION

Section 303(a) of the LMRA makes it unlawful for a labor organization to engage in conduct defined as an "unfair labor practice" in Section 8(b)(4) of the NLRA. *See* 29 U.S.C. § 187(a). Section 8(b)(4) of the NLRA makes it an "unfair labor practice" for a labor organization to engage in, or to induce any individual to engage in, a strike, where an object thereof is to force any person to cease doing business with any other person or to force an employer to recognize or bargain with a labor organization not certified as the representative of the employer's employees. *See* 29 U.S.C. § 158(b)(4)(i)(B). Section 303(b) of the LMRA provides that any person injured in "his business or property" by virtue of a Section 303(a) violation "shall recover the damages by him sustained and the cost of the suit." *See* 29 U.S.C. § 187(b). The LMRA is silent on the subject of prejudgment interest.

### I. The Law of Prejudgment Interest

■ Since the early part of this century, the United States Supreme Court has stated repeatedly that discretionary awards of prejudgment interest are permissible under federal law in certain circumstances. Under the Court's analysis, the award should

be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. *See Loeffler v. Frank*, 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988); *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); *Rodgers v. United States*, 332 U.S. 371, 373–74, 68 S.Ct. 5, 6–7, 92 L.Ed. 3 (1947); *Board of County Comm'rs of the County of Jackson v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939); *Miller v. Robertson*, 266 U.S. 243, 257–58, 45 S.Ct. 73, 78–79, 69 L.Ed. 265 (1924).

On the basis of one or more of these enumerated considerations, the Court has allowed recovery of prejudgment interest under a variety of federal laws, despite the silence of the laws on the subject of interest. *See, e.g., Loeffler*, 486 U.S. at 557–58, 108 S.Ct. at 1970–71 (suit for back pay under Title VII); *Jacobs v. United States*, 290 U.S. 13, 16–17, 54 S.Ct. 26, 27–28, 78 L.Ed. 142 (1933) (suit under takings clause of Fifth Amendment; interest viewed as part of "just compensation"); *Waite v. United States*, 282 U.S. 508, 509, 51 S.Ct. 227, 227, 75 L.Ed. 494 (1931) (patent law infringement suit; interest viewed as part of "entire compensation" to which statute referred); *Miller*, 266 U.S. at 250, 258, 45 S.Ct. at 76, 78 (contract suit under Trading With the Enemy Act); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 302, 304–06, 43 S.Ct. 354, 354, 354–57, 67 L.Ed. 664 (1923) (suit for taking of property under the Lever Act; interest viewed as part of "just compensation" to which statute referred); *Billings v. United States*, 232 U.S. 261, 284–88, 34 S.Ct. 421, 425–27, 58 L.Ed. 596 (1914) (suit to recover federal excise taxes paid).

■ The Court has, however, disallowed prejudgment interest awards in certain instances. Prejudgment interest may not be awarded, of course, when Congressional intent is to the contrary. Intent to deny recovery of prejudgment interest may be obvious from the language of the statute itself. *See United States v. Goltra*, 312 U.S. 203, 207, 211, 61 S.Ct. 487, 490, 492, 85 L.Ed. 776 (1941) (statute governing plaintiff's claim against the United States provided no interest until "rendition of judgment"). Even when the statute is silent, intent to deny recovery of interest may be inferable from (i) the state of the law on prejudgment interest, for the type of claim involved, at the time the statute was passed, and (ii) consistent denial by the courts of prejudgment interest under the statute and failure by Congress, despite amendments to the statute, to address prejudgment interest awards. *See Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 336–39, 108 S.Ct. 1837, 1842–44, 100 L.Ed.2d 349 (1988) (denying prejudgment interest under Federal Employers' Liability Act).

■ Awards of prejudgment interest must not result in over-compensation of the plaintiff. Accordingly, the Court has suggested disapproval of such awards where the statute itself fixes damages deemed fully compensatory as a matter of law. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 699, 714–16, 65 S.Ct. 895, 898, 905–07, 89 L.Ed. 1296 (1945) (interest not recoverable on liquidated damages provided by Fair Labor Standards Act of 1938). Similarly, prejudgment interest should not be awarded if the statutory obligation on which interest is sought is punitive in nature. *See Rodgers*, 332 U.S. at 374–76, 68 S.Ct. at 7 (interest not recoverable on penalty imposed on farmer for exceeding quota under Agricultural Adjustment Act); *United States v. Childs*, 266 U.S. 304, 308–10, 45 S.Ct. 110, 111, 69 L.Ed. 299 (1924) (interest recoverable on back taxes due, but not on penalty assessed for nonpayment).

■ The relative equities may make prejudgment interest inappropriate when the defendant acted innocently and had no reason to know of the wrongfulness of his actions, *see Jackson County*, 308 U.S. at 352–53, 60 S.Ct. at 289; when there is a good faith dispute between the parties as to the existence of any liability, *see St.*

Louis & O'Fallon Ry. Co. v. United States, 279 U.S. 461, 478, 483, 49 S.Ct. 384, 385, 387, 73 L.Ed. 798 (1929) (suit under Interstate Commerce Act to recover excess income allegedly earned); or when the plaintiff himself is responsible for the delay in recovery, see Redfield v. Bartels, 139 U.S. 694, 695, 702–03, 11 S.Ct. 683, 686, 35 L.Ed. 310 (1891) (suit to recover duties wrongfully imposed; interest denied since plaintiff neglected bringing suit for years).

Our prejudgment interest decisions have been in accord with the Supreme Court's approach. We have allowed discretionary awards of prejudgment interest, notwithstanding the statute's silence on the subject of interest, when the awards were fair, equitable and necessary to compensate the wronged party fully. See, e.g., EEOC v. County of Erie, 751 F.2d 79, 81 (2d Cir. 1984) (award under Fair Labor Standards Act and Equal Pay Act) (citing Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947)); Katsaros v. Cody, 744 F.2d 270, 281 (2d Cir.) (award for breach of fiduciary duties by pension fund trustees under Employee Retirement and Income Security Act), cert. denied, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); Waterside Ocean Navigation Co. v. International Navigation Ltd., 737 F.2d 150, 153–54 (2d Cir.1984) (foreign arbitral award under 9 U.S.C. § 207); Mitsui & Co. v. American Export Lines, Inc., 636 F.2d 807, 823, 824 (2d Cir.1981) (award under the Carriage of Goods by Sea Act) (citing Miller v. Robertson, 266 U.S. 243, 258, 45 S.Ct. 73, 78, 69 L.Ed. 265 (1924)); Rolf v. Blyth, Eastman Dillon & Co., 637 F.2d 77, 86–87 (2d Cir.1980) (award under section 10(b) of the Securities Exchange Act of 1934) (citing Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962)); see also International Ass'n of Machinists v. United Aircraft Corp., 534 F.2d 422, 446–47 (2d Cir.1975) (award in contract action brought under Section 301 of the LMRA), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976).

By contrast, we have suggested that prejudgment interest is improper where the statute itself already provides for full compensation or punitive damages, see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 80 (2d Cir.1971) (treble and punitive damages available under antitrust laws), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); United States v. Foster Wheeler Corp., 447 F.2d 100, 102 (2d Cir.1971) (double damages available under False Claims Act); or where tradition or the language of the statute makes the award inappropriate, see Gretchen v. United States, 618 F.2d 177, 178 & n. 2 (2d Cir.1980) (Public Vessels Act failed to provide interest until "rendition of judgment"); Gilroy v. Erie–Lackawanna R.R. Co., 44 F.R.D. 3, 4 (S.D.N.Y.1968) (prejudgment interest "traditionally" not awarded on claims under Federal Employers' Liability Act).

The certainty of the damages due the plaintiff has been another factor in resolving prejudgment interest issues. The Supreme Court initially embraced the strict common law view that interest may not be recovered where damages are unliquidated, or difficult to ascertain with precision at the time of the alleged wrongdoing. See, e.g., Mowry v. Whitney, 81 U.S. (14 Wall.) 620, 653, 20 L.Ed. 860 (1872) (denying prejudgment interest in patent law infringement action). Accordingly, prejudgment interest originally was available only in contract actions, if at all. The reasoning of the common law was that interest would be unjust if the party committing the wrongdoing could not know exactly how much to tender to the wronged party to make the latter whole.

Even in the modern cases awarding prejudgment interest, damages have been ascertainable with precision, at least by the time of trial or judgment. For instance, the amount of back pay due an employee or the losses incurred in a fraudulent securities transaction could be calculated with certainty in many cases by the finder of fact, after consideration of the available information. However, the significant feature of these same cases was that no party could foresee, at the time of the wrongdoing, the full amount of damages that would result. The difficulty of computing a "make whole" amount frequently persisted

until judgment itself. In an employment case, nobody knows on the date of the wrongful termination the amount of back pay that will be necessary to make the plaintiff whole. The quantity can only be determined at trial, on the date verdict is rendered, and is therefore not "liquidated" in the common law sense. *See Greenberg v. Paramount Pictures, Inc.*, 85 F.2d 42, 45 (2d Cir.1936) (L. Hand, J.). These problems of calculation also exist in cases in which the injury is more similar to Wickham's. In a securities fraud case, for example, no one knows on the date of the deception how much loss there will be in the value of the stock, or what the stock's price will be on the date suit is brought. Similarly, in a patent infringement case, it is impossible to determine at the time of infringement the profits that will be lost by one party or gained by the other. Yet, prejudgment interest awards have been upheld frequently in these and analogous cases, both by the Supreme Court and by this Court.

Accordingly, the old common law rule of liquidated damages no longer retains its full vitality. The Supreme Court has practically said as much, *see Miller*, 266 U.S. at 258, 45 S.Ct. at 78; *see also Funkhouser v. J.B. Preston Co.*, 290 U.S. 163, 168–69, 54 S.Ct. 134, 136, 78 L.Ed. 243 (1933), as have we, *see United Aircraft*, 534 F.2d at 447; *see also Greenberg*, 85 F.2d at 45, as has at least one other circuit, *see Eazor Express, Inc. v. International Bhd. of Teamsters*, 520 F.2d 951, 973 (3d Cir.1975) (citing *Miller*, 266 U.S. at 258, 45 S.Ct. at 79), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976). Moreover, the current "equitable" and discretionary rule, based on the need for full compensation and fairness under the circumstances, necessarily rejects much of the common law's approach to prejudgment interest.

The speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded. However, the proper inquiry must include the other factors we have identified: analysis of the pertinent statute and its purposes; the need to fully compensate the injured party; fairness and the relative equities; and the specific circumstances of the parties and of the case. The degree of speculation must then be considered in light of these other factors to determine the propriety of prejudgment interest. We recognize that in some Section 303 actions the fact finder's calculation of losses suffered by the employer will be so conjectural that prejudgment interest should not be awarded. Nonetheless, while the presence of "abstruse inquiries" and "difficult questions of proof" in the calculation of damages are factors to be considered carefully, these problems must be considered together with other factors that may favor prejudgment interest. *See Hughes*, 449 F.2d at 80.

For the foregoing reasons, we cannot agree with the union that the silence of the LMRA on the subject of interest, or the unliquidated nature of damages in a Section 303 case, are sufficient without more to bar the award made to Wickham.

## II. The Award of Interest Against the Union

■ The factors generally justifying an award of interest are present in this case. Wickham clearly suffered actual damage to its business because of the secondary strike. The union insists that Wickham's work on the schools was interrupted for only the two week period during which the Board of Education stop orders were outstanding, not for the two month period of the strike. There is some indication in the record, however, that the disruption in this case lasted for two months, from early July 1974 until early September 1974, when the strike was enjoined by a federal district court. *See Wickham I*, 542 F.2d at 862; *Wickham II*, 715 F.2d at 23, 24. In any event, the disruptions and delays, whether of two weeks or two months, were of real impact. The stop orders issued by the Board of Education directed Wickham to remove all of its men and materials from the school construction sites. Initial compliance with the orders alone disrupted labor and supply schedules. Each of the three contracts had a duration of less than

a calendar year, and we cannot say that a two week stoppage, in the context of the construction business in which Wickham is engaged, failed to cause further problems. The district court found that because of the delays, Wickham had to perform certain of its work while the schools were in session, and that the projects were more costly to complete as a result. There is nothing in the record to the contrary. *See also, Wickham II,* 715 F.2d at 25. It is reasonable to believe (as the jury appears to have believed on the basis of the evidence presented) that the disruptions and delays caused by the strike eroded Wickham's expected profits from the contracts, by increasing overhead and supply costs and making Wickham's use of labor and resources less efficient than would have otherwise been the case.

Hence, Wickham was deprived of money that it otherwise would have earned but for the secondary strike. As Judge Mukasey pointed out, the damage was incurred by Wickham on September 1, 1975, the date on which Wickham was to have received payment under the original schedule contemplated by the contracts. Therefore, Wickham has been deprived of a sum owed to it, under Section 303 of the LMRA, for over 16 years. It was not an abuse of discretion for the district court to determine that prejudgment interest was necessary to compensate Wickham fairly under the circumstances, especially in view of high inflation during several of those years. *See Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980).

Further, as indicated by the language of Section 303(b), the purpose of the civil remedy provided by that provision is compensatory and remedial. *See Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton,* 377 U.S. 252, 260–61, 84 S.Ct. 1253, 1258–60, 12 L.Ed.2d 280 (1964). Under the circumstances of this case, an award of prejudgment interest comports with the remedial scheme of the statute. By contrast, the factors that have led federal courts to deny prejudgment interest awards are markedly absent in this case.

There is no indication that Congress intended to deny recovery of prejudgment interest in Section 303 cases. In *Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988), a case involving a personal injury suit by a railroad employee, the Supreme Court concluded that prejudgment interest awards under FELA were contrary to the intent of Congress. The Court reached this conclusion because (i) in 1908, at the time FELA was passed, the common law rule barring recovery of interest in tort actions was still in force, and (ii) a great many state and federal courts had concluded with "virtual unanimity" over the years since the passage of FELA that prejudgment interest should not be available under the statute. *See id.* at 337–39, 108 S.Ct. at 1843–44. The Court held that under these circumstances, intent to deny interest recovery could be inferred from both the original silence of Congress on the subject of prejudgment interest, and Congress' failure, despite many amendments to FELA, to make any additions on the subject to the statute in the face of unanimous court holdings denying interest. *See id.*

There is no similar indication that Congress intended to deny recovery of prejudgment interest in actions under Section 303 of the LMRA. The legislative history of the LMRA is as silent as that of FELA on the subject of prejudgment interest. However, the LMRA was passed in 1947, well after the passage of FELA. By the 1940s, the common law rule against prejudgment interest in cases of unliquidated damages and tort actions had eroded severely, and was supplanted by an equitable and discretionary approach emphasizing compensation. *See Prager v. New Jersey Fidelity and Plate Glass Ins. Co.,* 245 N.Y. 1, 5–6, 156 N.E. 76 (1927) (Cardozo, C.J.) (noting that in cases involving prejudgment interest considerations of "policy and justice" frequently controlled, and that interest may be necessary to make plaintiff whole); *see also Greenberg v. Paramount Pictures,* 85 F.2d 42, 45 (2d Cir.1936) (L. Hand, J.).

Prejudgment interest in personal injury cases similar to those covered by FELA

has not become accepted even to this day. By contrast, awards of prejudgment interest, without inquiry into the certainty of the losses suffered at the time of the wrongdoing, were acceptable well before the passage of the LMRA in tort cases involving injury to property or business. *See Flamm v. Noble*, 296 N.Y. 262, 267–68, 72 N.E.2d 886 (1947) (citing *McCormick v. Pennsylvania Cent. R.R. Co.*, 49 N.Y. 303 (1872); *Parrot v. Knickerbocker Ice Co.*, 46 N.Y. 361 (1871); *Andrews v. Durant*, 18 N.Y. 496 (1859)). Moreover, the Supreme Court itself decided *Miller* in 1924, *Waite* in 1931, *Funkhouser* in 1933, and *Jackson County* in 1939, all well before passage of the LMRA. The *Rodgers* decision was handed down in 1947, the very year the LMRA was passed. The Court's language in these cases strongly suggested an abandonment of the common law approach to prejudgment interest under federal statutes, and endorsement of a more discretionary approach.

Unlike the plethora of courts that have rejected recovery of prejudgment interest under FELA, only a relatively small number of courts have considered directly the issue of prejudgment interest under Section 303 of the LMRA. Of the courts that have considered the issue, few have expressed the hostility to prejudgment interest we perceive in the FELA cases. Moreover, the long history of denial of prejudgment interest in the FELA cases, and emphasized in *Monessen*, is wholly absent in the context of the LMRA.

The Eighth Circuit has disallowed prejudgment interest in a Section 303 case, apparently on common law reasoning that damages in a Section 303 action are by definition unliquidated. *See Noranda Aluminum, Inc. v. United Bhd. of Carpenters and Joiners*, 528 F.2d 1304, 1310 (8th Cir.), *cert. denied*, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976). This strict approach appears to have been followed once in the District of Massachusetts, without discussion of the matter by the First Circuit on appeal. *See John B. Cruz Const. Co. v. United Bhd. of Carpenters and Joiners*, No. 84–2041MC, 1989 WL 63680 (D.Mass. 1989), *aff'd*, 907 F.2d 1228 (1st Cir.1990).

On the other hand, prejudgment interest in Section 303 suits has been awarded (with neither discussion on the merits nor reversal by the court of appeals) in the District of Massachusetts, *see Allied Int'l, Inc. v. International Longshoremen's Ass'n*, 814 F.2d 32 (1st Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); in the Western District of Pennsylvania, *see C & K Coal Co. v. United Mine Workers of Am.*, 537 F.Supp. 480 (W.D.Pa.1982), *aff'd and rev'd in part on other grounds*, 704 F.2d 690 (3d Cir.1983); and in the Southern District of Mississippi, *see Gulf Coast Bldg. & Supply Co. v. International Bhd. of Elec. Workers*, 460 F.2d 105 (5th Cir. 1972).

While the Third Circuit has set aside a prejudgment interest award under Section 303, we find it significant that the court did not apply a *per se* rule against the award. Rather, the court applied an equitable rule similar to the one we have discussed here, and decided that on the particular facts of that case no unjust enrichment meriting interest compensation existed. *See Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540–41 (3d Cir.1983). Similarly, in an opinion remanding a Section 303 case to the Eastern District of Wisconsin with guidelines for recomputation of damages, the Seventh Circuit passed over without adverse comment the district court's award of prejudgment interest on the original amount of damages calculated. *See Boxhorn's Big Muskego Gun Club v. Electrical Workers Local 494*, 798 F.2d 1016, 1022–23 (7th Cir.1986). We note also that the Third Circuit has upheld an award of interest in a dispute under Section 301 of the LMRA for breach of contract. *See Eazor Express, Inc. v. International Bhd. of Teamsters*, 520 F.2d 951 (3d Cir.1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976). Likewise, we reversed and remanded a district court decision not to grant interest in a Section 301 action, noting that such a grant might have been entirely appropriate under the circumstances. *See United Aircraft*, 534 F.2d at 446–47.

The LMRA does not fix liquidated damages, and does not double or treble damages. Nor is a Section 303(b) award punitive in nature. Therefore, the interest award to Wickham is not overly compensatory or otherwise improper. Moreover, there is no basis in the history of the dispute between Wickham and the union for concluding that the union acted innocently or that the union's actions against Wickham were taken in good faith. While there are cases in which it is difficult to determine whether an unlawful secondary strike has occurred, this is not one of those cases. There is every indication in this case that the union knew it was clearly violating a specific statutory duty erected by the LMRA. *See Wickham I*, 542 F.2d at 863, 865–67. Moreover, as we observed shortly after the strike, the union's coercive attempt to oust the Teamsters as bargaining representative of Wickham's employees itself was of "dubious legality," and a "fundamental abuse" of the responsibilities of a labor organization. *See id.* at 865, 867.

The availability of both injunctive and monetary relief under the labor laws for secondary strikes reflects a strong national policy against behavior Congress found quite objectionable. *See* Robert A. Gorman, *Basic Text on Labor Law, Unionization and Collective Bargaining* 291 (1976). The policy is rooted in the desire to protect innocent third parties from labor disputes. In this case, the union's unlawful activity led to the disruption of public schools. These observations are offered not to suggest in any way that the union deserves to be penalized by an award of prejudgment interest, but rather to emphasize that the award does not strike us as inequitable under the circumstances.

We do not agree with the union that the Supreme Court's decision in *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), militates against an award of interest in this case. *Laborers Health* did not even address the question of prejudgment interest, but rather involved a jurisdictional question arising under ERISA. While the Court did state in dicta that prejudgment interest awards become "problematic" in labor cases where there is a "good-faith dispute over both the existence and the extent of the employer's liability," the Court also noted that "it is entirely appropriate to award prejudgment interest" when a specific contractual provision is breached. *See id.* at 551–52, 108 S.Ct. at 837–38. As we have said, it is improbable that the union's actions toward Wickham were taken in good faith; and, in any event, whatever doubts there may have been as to the exact amount of the union's liability, there has been little doubt for years that the union breached a specific duty imposed by the LMRA. In *Laborers Health*, by contrast, the employer simply ceased to make contributions to a pension plan after the contract obligating him to do so had expired. *See id.* at 542, 108 S.Ct. at 832. That is a far cry from what went on here.

The union further contends that, although a jury determined that the union was civilly liable to Wickham in 1982, the extent of that liability was not established until 1991 and therefore it would be unfair for interest to accrue prior to that time. We disagree. It was entirely appropriate for Judge Mukasey to choose the date of injury as the date on which prejudgment interest should begin to accrue. *See Taliercio v. Compania Empressa Lineas Argentina*, 761 F.2d 126, 129 (2d Cir.1985). It is also worth recalling that in 1975, both the NLRB and this Court determined that a "secondary boycott"—the basis of civil liability under Section 303—had occurred. While these determinations had no res judicata effect on the civil suit as such, they did provide early notice of potential civil liability.

The district court also determined that the long delay in obtaining judgment on the amount of damages was due essentially to procedural matters beyond Wickham's control. The record does not suggest that this determination is clearly erroneous, and we are not in a position to reexamine *de novo* the 17 year procedural history of this dispute. Moreover, it is undisputed that

Wickham promptly commenced its Section 303(b) suit in 1974. Accordingly, we see no basis for reversing the interest award on grounds of delay by the plaintiff.

Lastly, the damages suffered by Wickham in this case were not so conjectural that an award of prejudgment interest was an abuse of discretion under the circumstances. The total revenue to be earned by Wickham under the three contracts was known with certainty to be $502,000. Further, as an experienced contractor, Wickham probably had a good idea of the expected cost of labor and materials. The trial testimony of Biele, Wickham's President, was that Wickham expected a 10% profit. We realize that Biele could not recall where this figure came from, but note that the same profit margin is given in a 1974 letter from Wickham to the Board of Education. The letter was an exhibit at trial. Further, as we noted in our earlier decision remanding this case for a new trial on damages, only the work stoppage could provide a legal basis for recovery under Section 303(b), since no evidence existed linking the union's activities to the various other misfortunes that Wickham suffered at the time. *See Wickham II*, 715 F.2d at 25, 28–29.

Therefore, the upper limit on damages could be calculated with some certainty at about $50,200, the total profits expected under the three contracts. The jury's task was relatively discrete: to determine how much of this expected profit was eroded due to the work stoppage, or, as Judge Mukasey put it in his instructions, to determine what Wickham "would have earned less the amount [Wickham] actually earned."

According to the union, the jury declined to engage in such calculations and instead speculated as to damages by awarding Wickham "precisely" 10% of lost profits on only two contracts, those governing the work at P.S. 8 and P.S. 41. The union also contends, coincidentally, that Wickham's work was disrupted only at these two schools because workers were not present at the Tremont Early Childhood Center on the day the Board of Education stop orders

were issued. The record leaves us unconvinced of either contention. The total price of the P.S. 8 and P.S. 41 contracts was $406,000. Lost profits on these contracts would have been $40,600, not $41,000.

It is possible that the jury did that which the union contends, but simply rounded upwards. Yet Wickham has maintained all along that work was disrupted at Tremont as well, and for 15 years the facts of this case have suggested that all projects were affected. *See Wickham I*, 542 F.2d at 862; *Wickham II*, 715 F.2d at 23. Even if nobody were present at the Tremont site the day the stop orders were issued, it is hardly unreasonable to believe that the terms of the stop orders prevented people from returning to the Tremont site, or otherwise disrupted the Tremont project.

Therefore, it is equally possible that the jury began with $50,200 expected profit for all three contracts, and then made a determination that about 80% of this sum was lost by Wickham due to increased costs and lost efficiencies. This determination does not strike us unreasonable or unduly speculative on the basis of the evidence presented at trial. In this connection, we note that the union has appealed neither Judge Mukasey's evidentiary rulings nor the amount of the jury's award.

We have carefully considered the union's remaining arguments, and find them to be without merit.

## CONCLUSION

The judgment of the district court awarding prejudgment interest under Section 303(b) of the LMRA is affirmed.