**Angela M. ROBINSON, Plaintiff,**

v.

**INSTRUCTIONAL SYSTEMS, INC. Defendant.**

**No. 96 CIV. 8356(CBM).**

United States District Court, S.D. New York.

Jan. 25, 2000.

Louie Nikolaidis, Lewis, Greenwald, Clifton & Lewis, P.C., New York City, for plaintiffs.

John A. Ridley, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, Angela Robinson, brings this action against her former employer, Instructional Systems, Inc. ("ISI"), alleging discrimination on the basis of race and/or national origin, in the terms of her employment and termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, Executive Law § 296, and the Administrative Code of the City of New York § 8–107(a). Plaintiff claims that ISI discriminated against her by reassigning her and by failing to offer her a raise. Plaintiff further claims that ISI retaliated against her for having filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and that as a result of her retaliatory termination, she was denied two weeks severance pay, two additional weeks of work, future per diem work, and the possibility of being rehired.

In a prior decision in this case, summary judgment was granted in favor of the defendant on all causes of action except the retaliation claims. Thereafter, the retalia-

tion claims were heard before a jury. On January 7, 2000, the jury found that defendant had discriminated against plaintiff in retaliation for her having filed a complaint with the EEOC, in violation of Title VII and related State and Municipal laws. For the reasons discussed below, the court now enters a judgment, granting plaintiff prejudgment interest on the jury award, denying plaintiff's request for punitive damages, and granting plaintiff attorneys' fees.

## BACKGROUND

### A. Factual History

The basic facts of the underlying dispute in this matter are discussed in detail in prior opinions on this matter, Judge Wood's March 19, 1999 decision partially granting defendant's motion for summary judgment and Magistrate Judge Eaton's February 9, 1999 Report and Recommendation on summary judgment. The court therefore assumes familiarity with the prior decisions and their descriptions of the facts of this case.

Briefly, plaintiff Angela Robinson, an African–American female, is a former employee of defendant ISI, a New Jersey corporation that marketed educational software to the Human Resources Administration of the City of New York ("HRA"). Joint Pre–Trial Order at 3–4. While Ms. Robinson was employed with ISI, the founder and president of ISI was Phyllis Kaminer.[1] In April 1993, Robinson was hired by ISI as an educational training consultant to provide computer training services to HRA personnel. Joint Pre–Trial Order at 4. HRA declined to renew its contract with ISI and ceased payments to ISI in June 1994. Def. Rule 56.1 Stm't ¶¶ 35–40. In a failed attempt to induce HRA to renew its contract, ISI continued to send staff, including Ms. Robinson, to HRA for five months. Def. Rule 56.1 Stm't ¶¶ 37–39. In late 1994, ISI began

---

1. Ms. Kaminer was president of ISI at all times relevant to this dispute. Ms. Kaminer died during the course of the litigation, in October 1999.

laying off employees involved in HRA projects. During this period, Robinson was injured in a car accident unrelated to her employment. As a result of injuries incurred in the accident, Robinson was out of work on disability leave between August 26, 1994 and December 1, 1994. Joint Pre–Trial Order at 4. Upon her return to work, Robinson was primarily assigned to the Help Desk at ISI's headquarters in Hackensack, New Jersey.

On February 23, 1995, Ms. Robinson filed a discrimination complaint with the EEOC in Newark, New Jersey, claiming that ISI had discriminated against her in the terms of her employment because of her race. On the morning of March 1, 1995, Ms. Kaminer met with Ms. Robinson, informing her that no further work was available for Ms. Robinson at ISI. Joint Pre–Trial Order at 5. Later that day, Ms. Kaminer received notice of Ms. Robinson's EEOC complaint. *See id.* Thereafter, Ms. Kaminer released Ms. Robinson without providing her with severance or termination benefits. Ms. Robinson was not subsequently rehired by ISI. In October 1996, Ms. Robinson obtained employment as a teacher for the City of New York.

### B. Procedural History

Ms. Robinson's claims in this suit originally alleged discrimination in her employment as well as her termination. Compl. ¶¶ 29–46. However, in a decision dated March 19, 1999, Judge Wood granted summary judgment in favor of defendants as to all claims except Ms. Robinson's retaliatory termination claims. This case was then transferred to this court from Judge Wood on August 29, 1999.

A jury trial was held on the retaliatory termination claim from January 4, 2000 until January 7, 2000. After the four day trial, a jury found that defendant ISI had deprived Ms. Robinson of termination benefits in retaliation for plaintiff having filed a complaint with the EEOC. The jury found that Ms. Robinson was entitled to $1,500 for the loss of severance pay, $1,500 for the denial of two additional weeks of

work, $14,000 for being deprived of the opportunity to be rehired, and $6,000 in compensatory damages for mental anguish. In all, the jury awarded Ms. Robinson $23,000 in damages. Once the jury entered a verdict finding defendant liable to the plaintiff for discrimination, the plaintiff requested that the jury be presented with a punitive damages charge and interrogatory. The court denied plaintiff's request.

In accordance with the discussion below, the court finds that plaintiff is entitled to prejudgment interest on the back pay and compensatory damage awards, that plaintiff is not eligible for an award of punitive damages, and that plaintiff is entitled to attorneys' fees with respect to the retaliatory termination claim.

### ANALYSIS

### I. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST

#### A. The Award

■ The decision to award prejudgment interest is "[o]rdinarily left to the discretion of the district court." *Gierlinger v. Gleason,* 160 F.3d 858, 873 (2d Cir.1998). The Supreme Court has determined that "[d]iscretionary awards of prejudgment interest... should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3,* 955 F.2d 831, 833–34 (2d Cir.1992) (citing *Loeffler v. Frank,* 486 U.S. 549, 557–58, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988)). Discretionary awards of prejudgment interest are proper, "[w]hen the awards [are] fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting Co.,* 955 F.2d at 835.

### 1. Back Pay

■ In the context of back pay, the considerations of compensation, fairness and the remedial purposes of the statute dictate that plaintiff is entitled to prejudgment interest. Title VII was enacted " '[t]o achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees[,]' [b]ackpay has an obvious connection with this purpose." *Albemarle Paper Company v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). Furthermore, "[i]t is the reasonably certain prospect of a backpay award that 'provide(s) the spur or catalyst which causes employers and unions to self-examine and self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history.' " *Albemarle Paper Company v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting *United States v. N.L. Industries, Inc.*, 479 F.2d 354, 379 (8th Cir.1973)). The Second Circuit has held that, "[t]o the extent. . . that the damages awarded to the plaintiff represent compensation for lost wages, 'it is ordinarily an abuse of discretion not to include pre-judgment interest.' " *Gierlinger v. Gleason*, 160 F.3d 858, 873–74 (2d Cir.1998) (quoting *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 145 (2d Cir.1993)). Additionally, "[a]warding prejudgment interest in such cases prevents the defendant employer from attempting to 'enjoy an interest-free loan for as long as it can delay paying out back wages[,]' and helps ensure that the plaintiff is meaningfully made whole." *Gierlinger v. Gleason*, 160 F.3d at 874 (internal citations omitted) (quoting *Saulpaugh v. Monroe Community Hospital*, 4 F.3d at 145).

In the instant case, the jury found that plaintiff was retaliated against for having filed a complaint with the EEOC. As plaintiff argued at trial, protection from retaliation is a necessary component of any worthwhile protection from employment discrimination. If an employee were unable to file a complaint without facing the threat of adverse employment action, the right to equality in the workplace would be functionally unenforceable. As in any discrimination case involving back pay, an award of prejudgment interest in this case will ensure that plaintiff is made whole, that defendant does not profit from any delay in paying the wages, and that the remedial purposes of Title VII and the related local statutes involved are served.

### 2. Compensatory Damages

■ Similarly, with respect to compensatory damages for mental anguish, the relevant fairness considerations require an award of prejudgment interest to the plaintiff. While prejudgment interest awards in discrimination cases are most commonly applied to back pay, courts also exercise their discretion to award prejudgment interest on compensatory damage awards when interests of fairness and full compensation to the plaintiff so require. *See, e.g., Worthington v. City of New Haven*, 1999 WL 958627 (D.Conn.1999) (Americans with Disabilities Act, awarding prejudgment interest for pain and suffering, humiliation and emotional distress, noting that "[c]ourts have . . . awarded prejudgment interest on compensatory damages." *Id.*, 1999 WL 958627, *17); *Perdue v. City University of New York*, 13 F.Supp.2d 326, 342 (E.D.N.Y.1998) (Title VII, awarding prejudgment interest on compensatory damages for pain and suffering and mental anguish, "[t]o make [the plaintiff] whole." *Id.*); *but see, Zerilli v. New York City Transit Authority*, 973 F.Supp. 311 (E.D.N.Y.1997) (Title VII, declining to grant prejudgment interest on compensatory damage award for pain and suffering). In the instant case, the jury found that as a result of defendant's retaliatory termination, plaintiff suffered mental anguish, sustaining damages in the

amount of $6,000 for this suffering. As with back pay damages, the considerations of fairness, compensation and the remedial purposes of the underlying statutes suggest that the defendant should be held fully responsible for plaintiff's injuries. Therefore, in order to meaningfully make plaintiff whole in this case, it is necessary to apply prejudgment interest to both the award for back pay and the award for mental anguish.

## B. Interest Rate and Methodology

The decision of which rate of interest to apply for the prejudgment interest is a " '[m]atter[ ] confided to the district court's broad discretion.' " *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir.1995) (quoting *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 613–14 (2d Cir.1994)); *see also Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir. 1994). Courts hearing federal employment discrimination cases in this circuit often apply the rate of interest provided in 28 U.S.C. § 1961 when awarding prejudgment interest. *See Skold v. American International Group, Inc.*, 1999 WL 405539 (S.D.N.Y.1999) (Title VII); *Losciale v. The Port Authority of New York and New Jersey*, 1999 WL 587928 (S.D.N.Y.1999) (ADEA); *Rivera v. Baccarat, Inc.*, 1999 WL 58933 (S.D.N.Y.1999) (Title VII); *Perdue v. City University of New York*, 13 F.Supp.2d at 342 (Title VII); *Zerilli v. New York City Transit Authority*, 973 F.Supp. at 317 (Title VII). Accordingly, this court will apply the rate of interest referred to in 28 U.S.C. § 1961 to plaintiffs awards.[2]

In order to properly compensate plaintiff, the appropriate methodology should be used in calculating the award. This court finds that the method described in *McIntosh v. Irving Trust Company*, 873 F.Supp. 872, 884 (S.D.N.Y.1995) sufficiently serves the objective of full and fair compensation to the plaintiff. First, the awards should be divided pro rata over the appropriate time period.[3] *See McIntosh v. Irving Trust*, 873 F.Supp. at 884 ("The objective of fully compensating the plaintiff is best effectuated by dividing the jury's back pay award evenly over the relevant time period for the purposes of calculating prejudgment interest." *Id.*) Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. *See McIntosh v. Irving Trust*, 873 F.Supp. at 884. Third and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually. *See Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 144 ("Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded." *Id.*); *McIntosh v. Irving Trust*, 873 F.Supp. at 884; *Losciale v. The Port Authority of New York and New Jersey*, 1999 WL 587928 (S.D.N.Y.1999) ("Using the average Treasury bill rate provided for post-judgment interest in 28 U.S.C. § 1961(a), and compounding interest annually, adequately insures that the plaintiff is sufficiently, but not overly, compensated." *Id.* at *10 (internal quotations omitted)).

## II. PLAINTIFF IS NOT ELIGIBLE FOR PUNITIVE DAMAGES

Punitive damages in this case are available under Title VII and the New York City Administrative Code. *See Greenbaum v. Handelsbanken*, 67 F.Supp.2d 228 (S.D.N.Y.1999) ("Although punitive damages are not awardable under the New

---

2. 28 U.S.C. § 1961(a) provides, in pertinent part, "[i]nterest shall be calculated... at a rate equal to the coupon issue yield equivalent...of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment."

3. In this case, both the back pay and the compensatory damages are sought for the same time period, the time during which Ms. Robinson was looking for employment, from March 1, 1995 until October 1, 1996.

York State Human Rights Law, plaintiffs can recover punitive damages for discriminatory activity both under § 8–502(a) of the New York City Administrative Code and under federal law." *Id.* at 262 (internal citations omitted)). Because the two punitive damages provisions are nearly identical, the court will discuss the standard for punitive damages under Title VII.

■ In cases of intentional employment discrimination, Title VII authorizes punitive damages where "[t]he complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). In the recent Supreme Court decision in *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), the Court further clarified the standard for punitive damages awards in Title VII cases. Upon examining the organization of the statute, the court reasoned that "[t]he very structure of § 1981a suggests a congressional intent to authorize punitive awards in only a subset of cases[.]" *Kolstad v. American Dental Association,* 119 S.Ct. at 2124. The court determined that " § 1981a(b)(1) requires plaintiffs to make an additional "demonstrat[ion]" of their eligibility for punitive damages." *Kolstad,* 119 S.Ct. at 2124. In interpreting the wording of the provision, the Court found that the statute's terms, "malice" and "reckless indifference," referred to "[t]he employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad,* 119 S.Ct. at 2124. The Court concluded that "[i]n the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad,* 119 S.Ct. at 2125. Noting that this standard rests primarily upon the defendant's state of mind, the Court held that " 'a positive element of conscious wrongdoing

is always required.' " *Kolstad,* 119 S.Ct. at 2126 (quoting C. McCormick, Law of Damages 280 (1935)).

■ In the case of defendant ISI, the plaintiff has introduced no evidence which could satisfy the required showing of "malice" and "reckless indifference" to plaintiff's federally protected rights. Defendant is a New Jersey corporation with its headquarters in Hackensack, New Jersey. Plaintiff filed her complaint with the EEOC in Newark, New Jersey. Plaintiff did not introduce any evidence from which a jury could infer that defendant knew that it may be acting in violation of the federal law or even the New York administrative law.

The Court in *Kolstad* alluded to an alternative method for plaintiffs to satisfy the required showing for punitive damages liability. If a plaintiff has not shown that the defendant knew of the relevant federal prohibition, a plaintiff could satisfy its burden by introducing evidence of outrageous or egregious behavior of the defendant to support an inference of an "evil motive." *See Kolstad,* 119 S.Ct. at 2126 ("[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.' " *Id.*) The Court determined that "[u]nder § 1981a(b)(1), pointing to evidence of an employer's egregious behavior would provide one means of satisfying the plaintiff's burden to 'demonstrat[e]' that the employer acted with the requisite 'malice or … reckless indifference.' " *Kolstad,* 119 S.Ct. at 2126 (quoting 42 U.S.C. § 1981a(b)(1)).

In the instant case, however, plaintiffs have not introduced any evidence of "egregious" or "outrageous" behavior of the defendants to support an inference of an "evil motive." Prior to Ms. Robinson's termination, defendants provided her with disability leave for the three months while she was recovering from her accident. In fact, both parties admit that Ms. Robinson's termination took place before Ms. Kaminer received notice of the EEOC complaint. While the retaliatory denial of

post-termination benefits may certainly constitute culpable behavior, it could not reasonably be construed as "outrageous" or "egregious" behavior. Furthermore, with respect to the denial of a severance package, ISI contends that it acted based on a company policy against offering severance to employees who have claims pending against ISI. Ultimately, ISI's actions cannot be characterized as outrageous or egregious, and therefore do not provide evidence to support an inference of an "evil motive."

In addition to detailing requirements for punitive damages liability, the Court also listed specific situations "[w]here intentional discrimination does not give rise to punitive damages liability." *Kolstad*, 119 S.Ct. at 2125. One such situation that the Court mentions is where "[t]he employer may simply be unaware of the relevant federal prohibition." *Kolstad*, 119 S.Ct. at 2125. Additionally, such liability would not apply in cases "[i]n which the employer discriminates with the distinct belief that its discrimination is lawful." *Kolstad*, 119 S.Ct. at 2125. Both situations apply to the instant case. As discussed above, plaintiff has not introduced any evidence to prove that defendant ISI was aware of the relevant federal prohibition. It is quite possible that Ms. Kaminer was unaware of Title VII's prohibition against retaliatory termination. Furthermore, it is certainly possible that Ms. Kaminer believed that the denial of post-termination benefits was perfectly legal—especially considering the defendant's contention that ISI had a policy of requiring a liability release before offering a severance package to a terminated employee.

Indeed, the requirement that the plaintiff prove defendant's knowledge of the federal law imposes a formidable, if not unattainable, burden on the plaintiff. Such a rigid standard leaves precious little room for any realistic opportunity for employees to seek punitive damages from employers who intentionally discriminate against them. Nonetheless, the Supreme

Court's opinion in *Kolstad* has interpreted the statute to severely limit punitive damages liability, and this court must abide by the standards outlined in the *Kolstad* decision. Accordingly, following the reasoning articulated in *Kolstad*, this court finds that plaintiff has failed prove that defendant is liable for punitive damages in this case.

## III. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES

### A. The Award

■ The attorney's fees provision of Title VII, 42 U.S.C. § 2000e–5(k) provides, in pertinent part:

> "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs[.]"

42 U.S.C. § 2000e–5(k). In this action, Ms. Robinson is the prevailing party. She obtained a verdict in her favor, and was awarded damages for her injuries. She is therefore entitled to attorneys' fees from the defendant.

Ms. Robinson was not, however, successful on all of her claims. As mentioned above, Ms. Robinson's claims of discrimination in the terms of her employment were dismissed in an earlier decision in this case. In *Reed v. A.W. Lawrence & Co. Inc.*, 95 F.3d 1170 (2d Cir.1996) the Second Circuit found that "[w]here the district court determines that the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories,' it is not an abuse of discretion for the court to award the entire fee." *See Reed v. A.W. Lawrence & Co. Inc.*, 95 F.3d at 1183 (quoting *Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1259 (2d Cir.1987)). In this case, the unsuccessful claims involved a core of facts and legal theories that are completely separate from those related to the successful claims. The claim for discrimination in the

terms of employment involved ISI's treatment of Ms. Robinson while she was employed with the company. Meanwhile, the retaliatory termination claim necessarily focuses on the circumstances surrounding her termination. The legal standards for the two claims are also different, and involve distinct, unrelated legal theories. Consequently, based on the standard outlined in *Reed*, the plaintiff in this case is only entitled to attorneys' fees related to the retaliatory termination claim.

### B. The Methodology

 The proper methodology for calculating attorneys fees is set forth in the Second Circuit's opinion in *City of Detroit v. Grinnell Corporation*, 560 F.2d 1093 (2d Cir.1977). First, the basic value of the attorneys services must be determined by "[m]ultiplying the numbers of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Grinnell*, 560 F.2d at 1098. Then, the court may take into account "[o]ther less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys" to determine the final fee amount. *Grinnell*, 560 F.2d at 1098. This court will assess attorneys' fees in conformity with this methodology.

### CONCLUSION

For the reasons detailed above, the court finds that plaintiff is entitled to prejudgment interest on the entire jury award, that plaintiff is not eligible for a punitive damages award, and that plaintiff is entitled to attorneys' fees related to her retaliatory termination claim.

### *ORDER*

The Clerk of this Court is directed to enter judgement for the plaintiff in the amount of $23,000.00.

In accordance with the Memorandum Opinion filed Simultaneously herewith, plaintiff is hereby granted prejudgment interest which the Clerk shall calculate.

Plaintiff's request for punitive damages is denied.

It is further ordered that, in accordance with the Memorandum Opinion filed simultaneously herewith, plaintiff's counsel shall submit to the court an affidavit as to the number of in court and out of court hours counsel for plaintiff spent on this case and any other requests regarding counsel fees within 40 days from the date of this order. Defendants response due 20 days later. Hearing on same April 13, 2000 at 10:00 a.m.

SO ORDERED.