Teresa ZERILLI, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY, Defendant.

No. 94 CV 5495.

United States District Court, E.D. New York.

May 30, 1997.

Opinion Denying Motion for Judgment or New Trial Aug. 1, 1997.

Thomas F. Bello, Staten Island, NY, for Plaintiff.

Joyce Rachel Ellman, Asst. Gen. Counsel, New York City Transit Authority, Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

GERSHON, District Judge.

This employment discrimination action against the New York City Transit Authority ("the TA") asserts claims under Title VII of the Civil Rights Act of 1964, §§ 701 *et seq.*, 42 U.S.C. §§ 2000e *et seq.*, and New York Executive Law, §§ 290 *et seq.* The jury returned a unanimous verdict in favor of the plaintiff, Teresa Zerilli, on two of her four claims of failure to promote because of her sex and on all four of her claims of retaliation for having engaged in the protected activity

of raising claims of employment discrimination; and it awarded her $95,000.00 in damages for pain and suffering.

Ms. Zerilli opted not to seek damages for backpay under her state law claims. She now seeks equitable relief, including an award of backpay, under Title VII.[1] Under Title VII, the Court is afforded broad discretion "to fashion the most complete relief possible for victims of discrimination." *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1133 (2d Cir.1989). Accordingly, at my direction, the parties submitted extensive papers on issues of equitable relief and, on March 24, 1997 and April 1, 1997, hearings were conducted. Having fully considered the record, the following equitable relief is awarded.

### I. Backpay.

There is a strong presumption in favor of awarding backpay to a successful Title VII plaintiff. Indeed, an award of backpay may be denied "only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); *see also Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 719, 98 S.Ct. 1370, 1381, 55 L.Ed.2d 657 (1978) ("the *Albemarle* presumption in favor of retroactive liability can seldom be overcome").

"Unrealistic exactitude is not required in determining backpay." *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 47 (2d Cir.1980). Discretion with respect to awarding backpay should be "exercised in accordance, with the 'make whole' purpose of Title VII;" "an award ordinarily ought to be based or the amount which, but for the discrimination, would have been earned, and should cover the period from when the discrimination

1. At the trial, I held that under the 1991 amendments to Title VII, set forth in 42 U.S.C. § 1981a(a)(1), (b)(2) and (c)(1), backpay awards are expressly excluded from the ambit of "compensatory damages," which are to be tried to the jury, and that a backpay award under Title VII continues to be a matter for the Court to decide. *See* 4 L. Sand, *Modern Federal Jury Instructions*, ¶ 88.03 at 88–173 (1996 ed.).

against the individual began until when it ended." 5 L. Larson, *Employment Discrimination*, § 92.06 at 92–39 (2d ed.1996). Guided by these principles,I have determined that Ms. Zerilli should be awarded backpay as described below.

## A. Salary.

■ The jury found that Ms. Zerilli was impermissibly removed from the position of Acting Manager of Budget and Personnel in January 1992. This position, however, carried no higher salary than the position to which she returned, Associate Staff Analyst. Therefore, no backpay will be awarded with respect to this removal.

Backpay will be awarded for two positions that the jury found had been impermissibly denied to Ms. Zerilli: Director of Administrative Support and Analytic Services, which was awarded to another TA employee in August 1992, and Manager of Surface Transit Business Planning, which was awarded to other TA employees in March 1993.

With respect to the position of Director of Administrative Support and Analytic Services, Ms. Zerilli is entitled to an award for the period of August 1992 through December 1992 in an amount based upon an annual salary of $50,200.00, and for the period of January 1993 through February 1993 in an amount based upon an annual salary of $52,-200.00, all to be reduced by the salary Ms. Zerilli did receive from the TA during these periods.

With respect to title position of Manager of Surface Transit Business Planning, Ms. Zerilli is entitled to an award of backpay for the period of March 1993 through December 1993 in an amount based upon an annual salary of $53,800.00, and for the period of January 1994 through December 1995 in an amount based upon an annual salary of $55,-950.00. For the period from January 1996 through the date of judgment, backpay will be awarded in an amount based upon an annual salary of $58,100.00. Again, subtracted from the award will be the amount of salary Ms. Zerilli received from the TA during these three time periods.

Finally, the jury also found that Ms. Zerilli was impermissibly denied the position of Superintendent of Transportation, Administration in May 1994. However, since the salary for this position was less than that for Manager, Surface Transit Business Planning, no backpay will be awarded for this position.

## B. Merit Increases and Fringe Benefits.

■ As a successful Title VII plaintiff, Ms. Zerilli may receive not only an award of straight salary, but also those benefits that would have accrued to her in the course her employment by the TA if she had not been the victim of discrimination. *See, e.g., Armstrong v. Trans World Airlines, Inc.*, 1991 WL 102511 at *3 (S.D.N.Y. May 29, 1991). The TA does award merit increases to its employees, but only when an employee has been in a particular position for at least a year, and only in those years when a determination has been made by the TA that it will award merit increases. The TA did not award merit increases for the years 1992 and 1995, and I will accordingly award Ms. Zerilli no merit increases for these years of her employment. The TA did award merit increases in 1993. However, as outlined above, since Ms. Zerilli will be treated as having been promoted to the position of Manager of Surface Transit Business Planning during that year, and thus would have been in the position for less than a year by the end of 1993, she will receive no merit increase for 1993.

In 1994 and 1996, the TA awarded merit increases, in amounts calculated at up to six percent of base salary based upon the quality of the employees' performance. Employees who received a poor or marginal performance rating received no merit increase. There is no basis in the record for concluding that Ms. Zerilli would have been placed in this category. On the other hand, only top employees received the full six percent increase. In light of the jury's determination that Ms. Zerilli was qualified to hold managerial positions, she should not be completely deprived of merit pay simply because it is not possible to precisely determine what the quality of Ms. Zerilli's work performance would have

been, had she not been the victim of discrimination. Other than by those who discriminated against her, Ms. Zerilli was viewed at the TA as well-qualified. On the other hand, it would be speculative to find that she would have been among the employees awarded the very highest increase. Under these circumstances, Ms. Zerilli will be awarded a four percent merit increase on her $55,950.00 salary for 1994 and a four percent merit increase on her $58,100.00 salary for 1996, and to the date of judgment.

■ Ms. Zerilli has not offered any basis for rejecting the TA's position that there should be no separate award for fringe benefits. She has offered no evidence that her medical benefits would have been higher had she received the promotions she sought. Nor has she proffered any basis for calling into question the TA's assertion that she suffered no loss of pension benefits because the TA calculates an employee's pension based upon the salary received by the employee at retirement. Finally, the only additional benefit received by TA employees in managerial positions is eligibility for tuition reimbursement for courses taken for the purpose of professional development. Since Ms. Zerilli has provided no basis for concluding that she would have furthered her education beyond the Masters degree she received in May 1992, a date that is before the date at which she could have received her earliest promotion to a managerial position, no award is made.

### C. Mitigation.

■ The law of this Circuit regarding the duty of a successful Title VII plaintiff to mitigate her damages is well settled:

A victim of employment discrimination has the same duty to mitigate his damages as any victim of a tort or breach of contract. This duty requires the plaintiff to utilize reasonable diligence in finding other suitable employment.... The employer bears the burden of proving that suitable work existed, and that the employee did not make reasonable efforts to obtain it.

*Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir.1992) (citations and quotations omitted).

The TA has not met its burden of showing that Ms. Zerilli failed in her duty to mitigate. It merely asserts that, prior to her employment with the TA, Ms. Zerilli worked in the securities industry, and it asks that I take judicial notice that "this industry has been growing very quickly within the last year and therefore is one of the fastest growing sectors of the economy." Letter of Joyce Rachel Ellman, Esq., dated March 27, 1997 at 3. I decline to take judicial notice as requested; and even proof that the "industry" is doing well would be insufficient to meet the TA's burden of showing that Ms. Zerilli herself could have found suitable employment within the industry. Most importantly, as I stated during the hearings held on equitable relief, Ms. Zerilli has satisfactorily met her duty to mitigate by repeatedly seeking promotions with the TA itself. Transcript of April 1, 1997 Hearing at 25–27. I reiterate here that her efforts to gain a promotion within the TA were an entirely appropriate and adequate effort to mitigate the damages she suffered from earlier denials of promotion. *See, e.g., Badeen v. Burns Intern. Sec. Services*, 765 F.Supp. 341, 348 (E.D.Tex.1991) (plaintiff's duty of mitigation in case involving discrimination in promotion is to remain oil job).

Relying on *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982), the TA also argues that the backpay award should end at June 1996 because, as of that date, Ms. Zerilli had the "opportunity" to be appointed to a managerial position as a Training Superintendent in the Department of Buses. The *Ford Motor Co.* case, however, has no application here. In *Ford Motor Co.*, the Court held that a Title VII plaintiff loses her right to backpay if she refuses promotion to a job that is the substantial equivalent of the one she was denied. Here, Ms. Zerilli did not refuse a promotion and, indeed, was not even offered a promotion. Rather, the TA merely asserts that she was being *considered* for a position, but that it was denied to her because she engaged in conduct that precluded her from being further considered. Ms. Zerilli vigorously denies any misconduct, and it would clearly be improper to now conduct a trial on whether the TA, which has been found to have improperly and repeatedly denied her a

promotion, would have offered her a different promotion but for her fault. Put another way, *Ford Motor Co.* does not mandate that, after a finding of liability, another trial be conducted to determine what, if any, promotional opportunities the plaintiff might have obtained from the TA but for her own alleged misconduct.

### D. Interest.

"Title VII authorizes a district court to grant pre-judgment interest on a backpay award." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). Indeed, "it is ordinarily an abuse of discretion *not* to include prejudgment interest in a backpay award." *Id.* (emphasis in original; quotation omitted).

■ Ms. Zerilli argues that any backpay award should be subject to a prejudgment interest rate of 9%, as set forth in Section 5004 of the New York Civil Practice Law and Rules. This position is rejected. The backpay award in this case is made, at plaintiff's request, on her federal claim. Prejudgment interest will therefore be based upon 28 U.S.C. § 1961, under which interest is determined upon the United States 52–week treasury bill rate. *See Luciano v. Olsten Corp.*, 912 F.Supp. 663, 677 (E.D.N.Y.1996) (collecting cases), *aff'd.*, 110 F.3d 210 (2d Cir.1997).

■ "Where prejudgment interest is given, it should be assessed upon damages only as they become due." *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 84 (2d Cir. 1994). With this rule in mind, prejudgment interest "must be compounded and applied to portions of the earnings . . . in a manner that will best reflect the progression, over time, of the damages sustained." *O'Quinn v. New York Univ. Med. Center*, 933 F.Supp. 341, 346 (S.D.N.Y.1996). In this case, Ms. Zerilli's backpay award is quantifiable on a month-by-month basis, and there is therefore no need for a *pro rata* allocation of the total award, as in, for example, *O'Quinn. Id.* Rather, the interest is to be calculated based upon the actual month-by-month award.

■■ In contrast to backpay awards, prejudgment interest is ordinarily not applied to awards of damages for pain and suffering. *See, e.g., McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 881–82 (S.D.N.Y.1995). *But see O'Quinn v. N.Y Univ. Med. Center*, 933 F.Supp. at 344–45 (recognizing general principle, but awarding prejudgment interest on award of damages for pain and suffering where jury was instructed to award such damages for "a very specific period of time"). There is no reason to depart from the general principle here and, accordingly, no prejudgment interest will be applied to the jury's award of $95,000.00 for pain and suffering.

## II. Promotion.

■ It remains for me to consider an award of prospective relief in the form of either promotion or front pay. A central and salutary purpose of an award of promotion or reinstatement is to give the plaintiff a chance to prove herself on the job free from the presence of impermissible discrimination. *See Carrero v. N.Y.C. Housing Auth.*, 890 F.2d 569, 579 (2d Cir.1989). Further, as opposed to the necessarily speculative nature of an award of front pay, promotion or reinstatement "involves the least amount of uncertainty . . . and at the same time assure[s] the plaintiff of employment free of discrimination." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727 (2d Cir.1984). Indeed, the preference for awarding reinstatement or promotion is such that an award of front pay "presupposes . . . that reinstatement [or promotion] is either impossible or impracticable." *Stratton v. Dept. for Aging for the City of N.Y.*, 922 F.Supp. 857, 866 (S.D.N.Y.1996) (quotation omitted).

Although originally Ms. Zerilli had requested that she be awarded one of the jobs that were the subject of the jury's verdict, at the hearing on equitable relief she took the position that she should be awarded front pay, because the TA was resistant to giving her a managerial position to which she was entitled and because of ongoing animosity between the parties. This position is rejected. Ms. Zerilli remains employed at the TA, and it will clearly be preferable for her to be employed in a managerial capacity rather than as an Associate Staff Analyst. The TA

is a large organization with many managers, and offices in all five boroughs of New York City; as will be seen, there is ample possibility of employment without animosity. Further, Ms. Zerilli's reliance upon *Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117 (2d Cir.1996) is misplaced. There, front pay was awarded because the plaintiff "ha[d] no reasonable prospect of obtaining comparable alternate employment." *Id.* at 126 (quotation omitted).

Assuming that promotion is an appropriate remedy, the parties do not agree as to what position Ms. Zerilli should be awarded. Ms. Zerilli argues that there are only two appropriate positions: 1) Director of Administrative Support and Analytic Services or 2) Manager of Surface Transit Business Planning. I disagree.

The Director position has been eliminated, and the Manager position is currently filled. Awarding Ms. Zerilli the latter position will require "bumping" its current occupant, a person who is innocent of any wrongdoing as regards Ms. Zerilli, an act which is highly disfavored. *See, e.g., Hicks v. Dothan City Bd. of Ed.*, 814 F.Supp. 1044, 1050 (M.D.Ala. 1993); *Daines v. City of Mankato*, 754 F.Supp. 681, 703 (D.Minn.1990).

Fortunately, bumping need not be considered here because the TA has offered Ms. Zerilli promotion to a position, Manager, Analytical Support in the Department of Buses, which I find to be an appropriate position for her. This is a newly created position which, the TA has confirmed, has recently been fully funded. The position is suitable for Ms. Zerilli's skills, requiring three years of supervisory or managerial experience and an undergraduate degree or its equivalent. The job will entail the supervision of staff analysts, assistance with the TA's budget process and representation of the Department at certain meetings. There will be one such Manager in each borough, and Managers will report to the Assistant General Manager of Strategic Planning in the borough in which they work. There has been no showing that in this position Ms. Zerilli will be supervised by any of the individuals who directly subjected her to discrimination or retaliation. Transcript of April 1, 1997 Hearing at 35–38,

51–53. Based on these representations of the TA regarding the position, I find that Ms. Zerilli should be promoted to Manager, Analytical Support in the Department of Buses at the earliest practicable date. Until the date that the TA places Ms. Zerilli in this managerial position, it is ordered that she be awarded front pay in an amount equal to the difference between her current salary and the salary she will receive in her new position, *see, e.g., King v. Staley*, 849 F.2d 1143 (8th Cir.1988), a salary that the TA has acknowledged will not be less than the salary for the position of Manager, Surface Transit Business Planning, which she is being awarded here as backpay.

### III. Injunctive Relief.

█ It was established at trial that Ms. Zerilli was subjected not only to the retaliatory performance evaluation of April 1993, but also to negative written commentary by individuals who were found to have engaged in retaliatory and discriminatory conduct toward her. I therefore order that Ms. Zerilli's personnel file be purged of the April 1993 evaluation and of any evaluations, comments or notes made by George Governale, Fred Herman or Carmine Corebello, or references to same. This should preclude "further retaliatory conduct by preventing any reliance on discriminatory evaluations and records." *McIntosh v. Irving Trust Co.*, 873 F.Supp. at 880.

### IV. Judgment.

The parties are directed to settle a form of judgment within 15 days of the date of this Memorandum and Order. The judgment must incorporate both the jury's award of compensatory damages and the equitable relief awarded here. Ms. Zerilli is awarded her costs. The bill of costs should be directed to the Clerk of the Court within 30 days after the entry of the judgment. *See* Local Civil Rule 54.1.

**SO ORDERED.**

### OPINION AND ORDER

This employment discrimination action was tried before a jury over eight days between

March 3 and March 13, 1997. The nine-person jury returned a unanimous verdict in favor of the plaintiff, Teresa Zerilli, on two of her four claims of failure to promote because of sex and on all four of her claims of retaliation for having engaged in the statutorily protected activity of raising claims of employment discrimination.

The defendant now moves on several grounds for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59. For the reasons stated below, the defendant's motions are denied in their entirety and the jury's verdict is sustained.

## THE CLAIMS AND THE VERDICT

The defendant New York City Transit Authority ("the TA") hired Ms. Zerilli in 1988 for the position of staff analyst and promoted her to the position of Associate Staff Analyst in 1990. In January 1991, Ms. Zerilli was appointed Acting Manager of Budget and Personnel in the Staten Island Division of the Surface Transit Department. One year later, in January 1992, Ms. Zerilli was removed from this position and replaced by a male TA employee, prompting her to file an internal EEO complaint in April 1992.

In May 1992, Ms. Zerilli was involuntarily transferred to a TA facility called the Castleton Depot. In July 1992, Ms. Zerilli applied, and was interviewed, for the position of Director of Administrative Support and Analytic Services (formerly known as Manager of Budget and Personnel), a position that was awarded to a male TA employee the following month. In February 1993, Ms. Zerilli applied, and was interviewed for, one of two positions for Manager of Surface Transit Business Planning. Both positions were later awarded to male TA employees. In April 1993, Ms. Zerilli filed a charge of unlawful gender discrimination with the EEOC. The following month she received an unfavorable and, according to her, unscheduled and unwarranted, performance evaluation that resulted in a written reprimand. In May 1994, Ms. Zerilli declined to apply for promotion to the position of Superintendent of Transportation, Administration after, she asserts, being told by TA management that she was ineligible for the position. This position was also awarded to a male TA employee.

In September 1994, Ms. Zerilli received a right to sue letter from the EEOC. She filed this action on November 30, 1994, asserting claims under Title VII of the Civil Rights Act of 1964, §§ 701 *et seq.*, 42 U.S.C. §§ 2000e *et seq.*, and New York Executive Law, §§ 290 *et seq.*

The jury found that Ms. Zerilli had been the victim of unlawful gender discrimination with respect to her removal from the position of Acting Manager of Budget and Personnel and with respect to the denial of promotion to Director of Administrative Support and Analytic Services. The jury found no discrimination with respect to Ms. Zerilli's failure to obtain the positions of Manager of Surface Transit Business Planning and Superintendent of Transportation, Administration, but did find that the TA retaliated against her in failing to award her these positions. The jury also found that Ms. Zerilli had been subjected to illegal retaliatory conduct when she was transferred to the Castleton Depot in May 1992 and when she was given a negative performance evaluation in May 1993.

The jury awarded Ms. Zerilli $95,000.00 in compensatory damages for pain and suffering. Subsequently, in an Opinion and Order dated May 30, 1997, she was awarded equitable relief, including backpay and a promotion to a managerial position.

## DISCUSSION

The TA faces heavy burdens on this post-trial motion. "Judgment as a matter of law [pursuant to Rule 50] may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings can only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir.1997) (quotation omitted). Under Rule 59, a new trial is warranted only if the trial judge is convinced that "the jury

reached a seriously erroneous result or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice." *Minetos v. City Univ. of New York,* 925 F.Supp. 177, 185–86 (S.D.N.Y.1996) (citing *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)); *see also Binder v. Long Island Lighting Co.,* 57 F.3d 193, 202 (2d Cir.1995) (reversing district court's grant of new trial in age discrimination in employment case because "the verdict, while not inexorable, was clearly not seriously erroneous"). Although the TA proffers multiple bases upon which it contends that it is entitled either to judgment as a matter of law or a new trial, none is meritorious.

### A. Timeliness of Filing With EEOC and Exhaustion of Administrative Remedies.

The timely filing of a charge with the EEOC is a prerequisite to the maintenance of a Title VII action. *Butts v. City of N.Y. Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993). The TA offers no basis for applying a period shorter than 300 days in this case. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Humphrey v. Council of Jewish Feds.,* 901 F.Supp. 703, 708 (S.D.N.Y.1995).

■ Ms. Zerilli filed a charge with the EEOC on April 8, 1993. The TA contends that three of Ms. Zerilli's claims—specifically, those arising from her removal from the position of Acting Manager of Budget and Personnel, her transfer to the Castleton Depot, and the failure of the TA to promote her to Manager of Budget and Personnel—were time barred as of this date.

The time constraints of filing Title VII claims are not as strict and unyielding as the TA contends. The Second Circuit has repeatedly recognized a "continuing violation" doctrine with respect to Title VII claims that allows the maintenance of certain charges that would otherwise be time barred. The doctrine has recently been reiterated as follows:

> The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice, a continuing violation may be found. If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.

*Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) (citations and quotations omitted).

There is no question that the failure of Ms. Zerilli to obtain promotion to the position of Manager of Budget and Personnel in August 1992 occurred within 300 days of the filing of her EEOC charge in April 1993. In addition, I find that the two earlier claims challenged by the TA as being untimely are sufficiently related to the denial of this promotion to constitute part of a continuing violation.

Ms. Zerilli's removal in January 1992 from the position of Acting Manager of Budget and Personnel was the result of a decision by George Governale and George Herman, who were, respectively, General Manager and Assistant General Manager of Ms. Zerilli's division within the TA. Ms. Zerilli was replaced by Carmine Corebello, a male TA employee who was a fellow staff analyst with Ms. Zerilli prior to her promotion to Acting Manager. The evidence adduced at trial showed that Mr. Corebello greatly resented Ms. Zerilli's promotion and that, for months before her removal, he engaged in continual and minute observation of Ms. Zerilli's workplace activities, made notes based upon such observations and passed these notes to George Herman. Ms. Zerilli filed an internal EEO charge in April 1992, which TA management personnel testified to having been aware of at the time. Shortly after the filing of the

internal charge, Mr. Governale and Mr. Herman directed Ms. Zerilli's transfer to the Castleton Depot, allegedly in retaliation for her having brought the EEO charge. Finally, the position of Manager of Budget and Personnel, which was denied to Ms. Zerilli in August 1992, was awarded to Mr. Corebello.

In sum, Ms. Zerilli alleged, and proved at trial, that Mr. Governale, Mr. Herman and Mr. Corebello conducted what amounted to a continuing campaign against her. Since one of the incidents of this campaign, the denial of promotion to Manager of Budget and Personnel, was timely charged to the EEOC, the earlier incidents, her removal from the position of Acting Manager of Budget and Personnel and her transfer to the Castleton Depot, are timely as well.

 The TA also argues that two of Ms. Zerilli's charges—those relating to her denial of promotion to the positions of Manager, Surface Transit Business Planning and Superintendent of Transportation—occurred subsequent to her filing of a charge with the EEOC in April 1993, and were never brought to the EEOC's notice, either through the amendment of her charge or the filing of a new charge. Thus, the TA asserts that these claims should be dismissed as a matter of law because administrative review of them has not been exhausted, or even initiated.

Although failure to exhaust administrative remedies is a ground for the dismissal of a Title VII claim, *see, e.g., Stewart v. U.S. I.N.S.*, 762 F.2d 193, 197–98 (2d Cir.1985), the TA again fails to appreciate the well settled limits to the application of the exhaustion requirement. Our Court of Appeals directs that a district court may hear Title VII claims "that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge." *Butts v. City of N.Y. Dept. of Housing*, 990 F.2d at 1401 (citation omitted). The two denials of promotion occurring subsequent to the EEOC filing were allegedly based upon Ms. Zerilli's gender and in retaliation for her having raised charges of gender discrimination. The two denials, which "address the same type of discrimination," *Kawatra v. Medgar Evers College of the City Univ. of*

*N.Y*, 700 F.Supp. 648, 652 (E.D.N.Y.1988), are thus reasonably related to the claims asserted in her EEOC charge. Thus, the TA's assertion that these claims should not have been addressed at trial is without merit.

**B. Scope of Retaliation Claims.**

 The TA argues that it was improper for the Court to have submitted to the jury the claims that Ms. Zerilli was subjected to illegal retaliation when she was denied promotion to Manager of Surface Transit Business Planning and to Superintendent of Transportation, Administration. At trial, Ms. Zerilli made a motion pursuant to Federal Rule of Civil Procedure 15(b) to deem the pleadings amended so as to assert these claims. The TA opposed the motion on the ground of prejudice but, in accordance with Rule 15(b)'s direction that amendment shall be granted "freely," the motion was granted. Transcript at 1104–1107.

The TA argues it was subject to "severe prejudice" because it was obliged at trial to defend these two instances of failure to promote against allegations of retaliation and gender discrimination and not, as it had expected before trial, against allegations of gender discrimination alone. However, the presence of "severe prejudice" is merely asserted by the TA; no attempt is made to detail its content. Specifically, the TA does not explain why its proffer of legitimate, non-discriminatory reasons for these failures to promote Ms. Zerilli would not, if believed, have served to rebut claims of retaliation as efficaciously as they would serve to rebut claims of gender discrimination.

 The TA also asserts that the jury charge with respect to the failure to promote to Manager of Surface Transit Business Planning and Superintendent of Transportation, Administration was "completely confusing and inconsistent," Deft.'s Mem. at 17, 24, because, while the jury was directed to consider whether these failures to promote were motivated by gender discrimination and/or retaliation, the jury was directed to consider the TA's failure to promote Ms. Zerilli to the position of Director of Administrative Sup-

port and Analytic Services in light of a claim of gender discrimination alone.

It is not at all clear why a rational jury could not consider each instance of failure to promote in the particular manner directed by the Court. Certainly, the TA was not prejudiced by the charge. In any event, the TA did not raise this objection to the jury charge at the charge conference, or at any other time before the jury began its deliberations. At least in the absence of plain error, I cannot grant a new trial on the basis of a supposedly erroneous jury charge "when a party might have obtained the correct jury charge by specifically bringing the matter to the attention of the Court at the proper time." *Metromedia Co. v. Fugazy*, 753 F.Supp. 93, 98 (S.D.N.Y.1990), *aff'd as amended*, 983 F.2d 350 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Here, I find no error and, if there were error, it is certainly not plain.

## C. Evidence of Retaliation.

The TA argues that there was insufficient evidence for the jury to have found that Ms. Zerilli's failure to be promoted to the positions of Manager, Surface Transit Business Planning and Superintendent of Transportation, Administration were the result of retaliation. With regard to both of these claims, the TA asserts that 1) there was no evidence that the individual making either of these promotion decisions knew of Ms. Zerilli's protected activity and 2) both of the decisions took place at times too far removed from Ms. Zerilli's raising claims of discrimination to have been motivated by retaliatory intent. Both of these arguments are without merit.

The TA does not deny that there was testimony at trial that TA management personnel were aware of both Ms. Zerilli's internal EEO complaint and the complaint she filed with the EEOC. Rather, the TA asserts that there was no evidence that the individuals responsible for the promotion decisions at issue here had knowledge of these complaints. The problem with this argument is that the record does not establish that the individuals named by the TA were the sole, or even the primary, decision makers.

The TA declares that David Shapiro, who was deceased at the time of trial, made the decision to promote someone other than Ms. Zerilli to the position of Manager, Surface Transit Business Planning. However, the record discloses that, while Ms. Zerilli was interviewed by Mr. Shapiro for the position, other candidates were interviewed by other TA officials. There was no testimony from any TA official that the promotion decision was Mr. Shapiro's alone.

The TA further asserts that Anderson Barnes made the decision with respect to filling the position of Superintendent of Transportation, Administration. The record does not establish this. On the contrary, Mr. Barnes testified that the decision was not his to make but; rather, that he requested the approval of his superiors to place an employee other than Ms. Zerilli in the position.

The TA's argument that the employment decisions at issue here took place too long after Ms. Zerilli's filing of discrimination complaints to be the product of retaliation is similarly at odds with the record. The TA correctly notes that Ms. Zerilli was turned down for the position of Manager, Surface Transit Business Planning in March 1993, eleven months after the filing of her internal EEO complaint. The TA neglects to mention, however, that the EEO complaint was pending until November 30, 1992, when a determination was issued after the conduct of an investigation of Ms. Zerilli's claims. Similarly, while the position of Superintendent of Transportation, Administration was filled in June 1994, fourteen months after the filing of Ms. Zerilli's EEOC complaint in April 1993, that complaint was pending until September 1994, when she received a right to sue letter.

The mere passage of time in no way precludes a finding of retaliation. On the contrary, "a causal connection between the adverse action and the protected activity can be established indirectly by showing that the protected activity was followed closely by adverse treatment, or directly through evidence of retaliatory animus directed against the plaintiff." *Dortz v. City of New York*, 904 F.Supp. 127, 157 (S.D.N.Y.1995) (empha-

sis supplied). Here, the evidence of retaliatory animus was clearly sufficient to support a reasonable jury conclusion that the causative element of a retaliation claim was proved.[1]

### D. Award of Compensatory Damages.

■ The jury awarded Ms. Zerilli $95,000 in compensation for various physical ailments and mental stress caused by the TA's discriminatory and retaliatory conduct. The TA now argues that this award was unwarranted and that, as a matter of law, the jury should not have been allowed to consider awarding compensatory damages at all.

The evidence in support of the award consisted of the testimony of Ms. Zerilli and her co-workers. There was no expert medical testimony offered as to Ms. Zerilli's physical and mental condition. From this, the TA concludes that, being based upon lay testimony alone, the award of compensatory damages was the product of the jury's "sheer speculation" and, as such, cannot stand. Deft.'s Mem. at 32.

This argument is without merit. An award of compensatory damages may be based upon lay testimony alone. *Miner v. City of Glens Falls*, 999 F.2d 655, 662–63 (2d Cir. 1993); *Portee v. Hastava*, 853 F.Supp. 597, 613 (E.D.N.Y.1994), *aff'd.*, 104 F.3d 349 (2d Cir.1996). Ms. Zerilli testified at length about the effects on her physical and mental condition of her treatment by the TA. Deft.'s Mem. at 30–31. Ms. Zerilli's co-workers provided corroborative testimony. The TA does not argue that it lacked the opportunity either to rebut this testimony through lay or expert witnesses or through argument on summation. It simply failed to exercise this opportunity. In sum, I find that the issue of compensatory damages was correctly submitted to the jury and that it rendered a reasonable award.

The TA also asserts that I erred in rejecting a proposed charge to the effect that the jury could find that Ms Zerilli failed to mitigate her damages relating to physical and mental disorders because she declined the TA's suggestion that she attend a psychological counseling program at the TA. I find no reason to reverse my ruling that, even assuming a duty on the part of a plaintiff to mitigate such damages—a duty for whose existence the TA provides no authority—there was insufficient evidence to support the charge requested and that it would have been an invitation to sheer speculation to have allowed the jury to consider, without any testimony on the question, the extent to which the psychological counseling would have alleviated Ms. Zerilli's condition had she agreed to engage in it. Transcript at 1147–1148; *see Miner v. City of Glens Falls*, 999 F.2d at 663 (trial court had no reason to find that "counseling could dispel the trauma" of physical and emotional distress had plaintiff sought such a course of treatment).

### E. Adverse Employment Actions.

■ The TA argues that three particular incidents of Ms. Zerilli's employment—her removal from the position of Acting Manager of Budget and Personnel, her transfer to the Castleton Depot and her negative performance evaluation—were not properly considered by the jury because they did not constitute adverse employment actions. The TA bases this argument upon the undisputed fact that none of these actions resulted in any loss of wages or benefits.

Here, once again, the TA resorts to an improperly narrow application of the discrimination laws. It has long been recognized in our Circuit that since "job discrimination may take many forms, Congress cast the prohibitions of Title VII broadly to include subtle distinctions in the terms and conditions employment as well as gross salary

---

1. In an effort to prove otherwise, the TA repeatedly cites *Bayard v. Riccitelli*, 952 F.Supp. 977 (E.D.N.Y.1997), but it is not to the contrary. In that case, the plaintiff was found to have failed to state a claim of retaliation with respect to a firing that took place a year after she had raised allegations of sexual harassment. The court noted that "[n]o other evidence exists in the record" to support a causal connection and that there was no evidence that reports of her seriously deteriorating job performance in the months prior to her discharge were pretextual. 952 F.Supp. at 987. The evidence with respect to discriminatory animus and job performance in this case is entirely different.

differentials based on forbidden classifications." *Rodriguez v. Bd. of Ed. of Eastchester,* 620 F.2d 362, 364 (2d Cir.1980). Or, as recently reiterated, the discrimination laws "[do] not define adverse employment action solely in terms of job termination or reduced wages and benefits.... Because there are no bright line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) (citing *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994)); *see also Medwid v. Baker,* 752 F.Supp. 125, 137–38 (S.D.N.Y.1990) (defining adverse employment decision "as a decision which has an attendant negative result, a deprivation of a position or an opportunity") (citation omitted).

There can be no doubt that there was sufficient evidence for the jury to have found that all three of the actions at issue were adverse, even though they entailed no loss of wages or benefits. The removal from the position of Acting Manager of Budget and Personnel reduced Ms. Zerilli from a supervisory, managerial position to that of a staff person. Ms. Zerilli herself testified to the humiliating effect of her removal from the position, testimony that was graphically supported by the fact that when she was removed, she became subject to a campaign of intense and intrusive observation of her work performance by Mr. Corebello, the employee who replaced her. There was also ample testimony that Castleton Depot, to which she was involuntarily transferred, was a location that was lacking in amenities and that there was a greatly reduced opportunity for Ms. Zerilli to perform work there that comported with her qualifications. Finally, the negative surprise performance evaluation was placed in Ms. Zerilli's personnel file, thereby prejudicing her efforts to advance within the TA.

**F. Jury Charges.**

 The TA asserts that three of its proposed jury instructions were erroneously rejected. As a threshold matter, flawed jury instructions can serve as a basis upon which to grant a new trial only when *"taken as a whole,* the jury instructions gave a misleading impression or inadequate understanding of the law." *Luciano v. Olsten Corp.,* 110 F.3d at 218 (emphasis supplied; quotation omitted). While objecting to the exclusion of specific charges, the TA does not attempt to demonstrate that the jury instructions as delivered met this standard.

The TA requested that charges be given reflecting the following three propositions: 1) that if a particular TA official approved Ms. Zerilli for a promotion, then an inference could be drawn that the same official's later decision to deny her a promotion was in good faith; 2) that if the TA "honestly believed" that Ms. Zerilli was a poor employee, its decision regarding promoting her could not have been motivated by discriminatory intent; and 3) that if the TA's decisions regarding Ms. Zerilli were merely "high-handed," "mistaken" or "sloppy," then discriminatory intent could not be found.

I declined to include these charges in the jury instructions because all three ask the jury to draw certain inferences concerning the non-discriminatory nature of the TA's intent toward Ms. Zerilli. Transcript at 1132–1135. Given the myriad inferences that the jury could have permissibly drawn based upon the evidence, I considered it unwise to draw the jury's attention to particular inferences. Rather, the jury instructions contained a general instruction regarding the practice of drawing inferences from evidence, Transcript at 1263–1264, and counsel were left free in their summations to posit particular inferences for the jury's consideration.

The jury was repeatedly reminded that the burden of proof remained with Ms. Zerilli to prove discriminatory intent by a preponderance of the evidence. Transcript at 1264–1265, 1267–1270. In light of our Court of Appeals' strong preference for simplicity in jury instructions in employment discrimination cases, *Cabrera v. Jakabovitz,* 24 F.3d 372, 380–83 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994), the TA's requests to add glosses to the issue of discriminatory intent were properly denied.

## G. Evidentiary Rulings.

■ The TA reiterates objections it made at trial to rulings barring certain testimony of TA officials. Specifically, after extensive discussions with counsel in each instance, I refused to admit testimony from Donna Simonie, who became Director of Labor Relation's in Ms. Zerilli's division in 1994, regarding conditions at the Castleton Depot after June of 1994, Transcript at 765–783, and the testimony of Dennis Kearney, Ms. Zerilli's direct supervisor at the Castleton Depot from June 1994 until August 1995, concerning Ms. Zerilli's work performance during this period. Transcript at 815–17. Since testimony on these matters concerned events occurring after the last date of discrimination alleged in the complaint, I held it to be irrelevant and thus inadmissible.

These rulings were plainly correct. Ms. Zerilli's transfer to the Castleton Depot took place in May 1992. The transfer was alleged to be retaliatory because of conditions prevailing at the depot *at that time*. The conditions prevailing more than two years later are clearly not relevant to the retaliatory nature of the transfer. Transcript at 771. For the same reason, I ordered the redaction of references in Ms. Zerilli's EEOC complaint to the allegedly undesirable condition of the depot after 1992. Transcript at 780–781.

Similarly, exclusion of evidence regarding Ms. Zerilli's work performance after the last alleged act of discriminatory conduct was proper, as it was not relevant either to the TA's intent or Ms. Zerilli's qualifications *at the time* the alleged adverse employment actions took place. Transcript at 815. *See, e.g., Gonzales v. Police Dept. of San Jose*, 901 F.2d 758, 761–62 (9th Cir.1990) (evidence of promotions of Hispanic police officers taking place after filing of complaint was irrelevant to the issue of whether Hispanic plaintiff himself suffered discrimination).

**2.** The reported cases cited by the TA are not on point. *Mills v. County of Monroe*, 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983), dealt not with the notice requirements of the General Municipal Law, but with those of the New York County Law, which are broader. *See Katt v. New*

## H. Satisfaction of Burden of Proof.

In a purely conclusory argument, the TA asserts that Ms. Zerilli failed to carry her burden of demonstrating the pretextual nature of the legitimate, non-discriminatory explanations proffered by the TA for its employment decisions regarding her. The problem with this argument is that it considers only the testimony of TA witnesses putting forth these explanations and fails to address a single instance of the considerable testimony of numerous witnesses not only as to Ms. Zerilli's qualifications and abilities, but also of discriminatory animus toward Ms. Zerilli by the TA. Clearly, Ms. Zerilli met not only the burden of demonstrating the pretextual nature of the TA's explanations, but also her "ultimate burden" of proving discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749–50, 125 L.Ed.2d 407 (1993); *Scaria v. Rubin*, 117 F.3d 652 (2d Cir.1997).

## I. Notice of Claim.

■ New York Public Authorities Law § 1212 mandates that in certain actions brought against the TA, the complaint shall contain an allegation that at least thirty days have elapsed since a notice of claim was served upon the TA in accordance with the procedures set forth in General Municipal Law § 50–e. The TA argues that, since it is undisputed that the complaint in this action does not contain such an allegation, at least Ms. Zerilli's state law claims are fatally defective.

The notice requirement of section 1212 does not apply to this employment discrimination case. *Cervenka v. New York City Transit Auth.*, 216 A.D.2d 511, 628 N.Y.S.2d 405 (2d Dept.1995); *see also Katt v. New York City Police Dept.*, 1996 WL 744870 at *2 (S.D.N.Y. Dec.31, 1996). Therefore, I find that Ms. Zerilli need not have a filed a notice of claim with the TA prior to commencing this action.[2]

*York City Police Dept.*, 1996 WL 744870 at *2. *Doyle v. Bd. of Education of Deer Park*, 230 A.D.2d 820, 646 N.Y.S.2d 842 (2d Dept.1996), interpreted Education Law § 3813, which mandates the filing of a notice of claim "for any cause whatever." Finally, *Roens v. New York*

## J. MABSTOA.

 The TA asserts, without evidentiary support, that Ms. Zerilli is an employee of The Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA") and not the TA. Thus, the TA argues that MABSTOA, which has not been sued here, is a necessary party to this action. The TA relies on the fact that the New York legislature created MABSTOA as a subsidiary of the TA. Public Authorities Law § 1203–a. However, the TA offers no basis for concluding that it is not Ms. Zerilli's employer for the purposes of both Title VII and New York law.

Federal Rule of Civil Procedure 12(b)(7) provides for the dismissal of an action for failure to join a necessary party under Rule 19. Rule 19(a) provides, in relevant part, that a person "shall" be joined to an action when "in the person's absence complete relief cannot be accorded among those already parties" to the action. Thus, a party is not necessary to an action, and joinder is not required, when "there can be complete relief for those already parties to [the] action without joinder." *Arkwright–Boston Mfrs. Mut. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985); *see also* Rule 19 Advisor, Committee Note to the 1966 Amendments (Rule 19 is a means for "joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court"); 4 *Moore's Federal Practice*, § 19.03[2][d] at 19–44 (3d ed. 1997) ("Joinder should not be compelled when meaningful relief can be granted without the absentee").

The TA has made no showing that it is incapable of providing any item of the relief awarded to Ms. Zerilli. On the contrary, it has vigorously argued as to the amount of backpay to which Ms. Zerilli is entitled and, in order to avoid a front pay award, proffered a managerial position which Ms. Zerilli could be awarded; indeed, it now represents that it has in fact offered Ms. Zerilli promotion to an appropriate managerial position in accord with my directions. It is therefore

*City Transit Auth.*, 202 A.D.2d 274, 609 N.Y.S.2d 6 (1st Dept.1994), did not involve a claim of

absurd to suggest either that a necessary party is lacking or that the TA is not Ms. Zerilli's employer for the purposes of both Title VII and New York law. *See Dortz v. City of New York*, 904 F.Supp. at 147 ("the term 'employer' under Title VII is construed by reference to the realities rather than the formalities of an employment relationship"); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y.1994) (outlining multifactor factual enquiry for determining existence of employer-employee relationship under New York employment discrimination law).

### CONCLUSION

The defendant's motion for judgment as a matter of law or for a new trial is DENIED in its entirety.

**SO ORDERED.**