OPINION
Plaintiff-appellant, Linda K. Tessmer, appeals the decision of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of defendants-appellees, Nationwide Life Insurance Company ("Nationwide") and Heather Davidson ("Davidson").
Appellant, a forty-five-year-old female, has worked for various departments and divisions of Nationwide for over twenty years. In 1992, appellant was promoted to the position of Training and Service Development Manager ("service manager") for Nationwide. As service manager, appellant was responsible for developing, designing and implementing in-house training programs.
In 1993, appellant and Deborah Hohman ("Hohman"), a female employee over the age of forty, entered into a job-sharing program provided by Nationwide. Under the job-sharing program, two employees "share" one full-time position, with each splitting the day or the week, but collectively working a full week's time. By the end of 1994, the position held by appellant and Hohman was classified as an "F" pay band position within Nationwide's compensation system, with an approximate minimum full-time salary of $33,000 and a maximum salary of $71,000.
In November 1994, Davidson became appellant's supervisor. Initially, appellant and Hohman reported directly to Davidson. In January 1995, Jim Dum ("Dum"), an employee in his early twenties, was transferred to Davidson's division. Davidson assigned Dum several of appellant's job duties, including her assignment regarding computer-based training. As well, in January 1995, Davidson informed appellant and Hohman that their position would be changed from service manager to training specialist. Initially, appellant held her new position as training specialist under the "F" pay band classification.
In April 1995, Davidson hired Richard Montgomery ("Montgomery"), a male in his twenties, as the new service manager. Montgomery became appellant's new immediate supervisor and assumed some of appellant's job responsibilities, including those relating to the department's annual budget. Thereafter, Davidson initiated a salary audit of appellant's new position as training specialist. As part of the audit process, appellant answered questionnaires concerning her new position. Davidson changed several of appellant's answers in the questionnaires. As a result of the audit, Nationwide downgraded appellant's position from the "F" pay band to a lower pay band "E," with a salary of approximately $14,000 to a maximum of $30,500 part-time. At the time of the change, appellant made in excess of $30,000 part-time. Appellant appealed the pay band reclassification. Nationwide affirmed the reclassification. However, as noted below, appellant no longer held the training specialist position when the reclassification was affirmed.
In December 1995, Davidson told appellant and Hohman that their job-share arrangement was going to be terminated. However, appellant was able to remain in Davidson's division and work part-time. Eventually, appellant left Davidson's division for another position in a different company within Nationwide.
Appellant filed this action as a result of the change in her position and job title from service manager to training specialist, the assigning of her job duties to younger males in their twenties, the initiating of a job audit that resulted in the training specialist position being reclassified into a lower pay band, and the abolishing of her job-share position. Appellant asserts claims of age discrimination in violation of Section 623et seq., Title 29, U.S. Code, the Age Discrimination in Employment Act ("ADEA"), and gender discrimination in violation of R.C.4112.02 against Nationwide. As well, appellant asserts a claim of tortious interference with a business opportunity against Davidson. Other relevant facts in this case are discussed in the opinion below. Appellees filed a motion for summary judgment and the trial court granted the motion on all counts.
Appellant appeals, raising three assignments of error:
 1. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE APPELLANT WAS SUBJECTED TO AN ADVERSE EMPLOYMENT ACTION.
 2. THE TRIAL COURT ERRED IN HOLDING THAT THE APPELLANT PRESENTED NO GENUINE ISSUES OF MATERIAL FACT ESTABLISHING ANY DIRECT EVIDENCE OF DISCRIMINATION.
 3. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE DAVIDSON'S MOTION FOR SUMMARY JUDGMENT REGARDING APPELLANT'S CLAIM OF TORTIOUS INTERFERENCE AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE APPELLANT SUFFERED DAMAGES.
Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. A moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support his or her claims.Id. Additionally, all evidence and any doubts must be construed in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 359.
An appellate court's review of summary judgment is denovo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588; Bard v. Society National Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497, unreported (1998 Opinions 4085, 4091). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Bard, at 4091; Jonesv. Shelly Co. (1995), 106 Ohio App.3d 440, 445.
As noted above, appellant's discrimination case is based on a federal age discrimination claim and a state gender discrimination claim. The burdens of proof and required elements in federal age discrimination cases and state gender discrimination cases are rooted in the same federal jurisprudence.Civil Rights Comm. v. David Richard Ingram D.C., Inc. (1994),69 Ohio St.3d 89, 93; Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501,504; Mitchell v. Toledo Hospital (C.A.6, 1992), 964 F.2d 577,582. Thus, we may properly look to federal case law when examining both of appellant's claims. See Ingram, at 93; see, also, Kohmescher, at 504. We also acknowledge that, because the claims are rooted in the same federal jurisprudence, appellant's claims of age and gender discrimination may be discussed together. A plaintiff may establish a prima facie case of discrimination either directly or indirectly. Gismondi v. M T Mortgage Corp.
(Apr. 13, 1999), Franklin App. No. 98AP-584, unreported (1999 Opinions, 736).
Appellant's first assignment of error concerns whether she is able to establish a prima facie case of age and gender discrimination under the indirect method. A plaintiff may indirectly establish a prima facie case of age and gender discrimination by showing that: (1) he or she was a member of a statutorily protected class; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class. Kohmescher, at 504 (indicating that the above analysis applies to gender discrimination cases brought under R.C.4112.02); Mitchell, at 582 (indicating that the above analysis applies to ADEA claims).
Appellant asserts in her first assignment of error that the trial court erred in concluding that appellant is unable to establish a prima facie case of age and gender discrimination under the indirect method because she did not suffer an adverse employment action. We agree.
Whether an employment action gives rise to an adverse employment action is to be determined on a case-by-case basis. See Zerilli v. New York City Transit Authority (E.D.N.Y. 1997),973 F. Supp. 311, 324 (indicating that, because there are no bright line rules defining an adverse employment action, courts must pour over each case to determine whether the challenged employment action reaches the level of adverse); Joiner v. Ohio Dept. ofTransp. (S.D. Ohio 1996), 949 F. Supp. 562, 567 (noting that a court must look at the cumulative weight of all the evidence to determine whether an employment action is adverse). Therefore, we acknowledge that there is no set definition of "adverse employment action" and realize that cases on this subject are diverse. However, we are able to look to other cases for guidelines in determining whether appellant suffered an adverse employment action in this case.
Generally, an adverse employment action is defined as a material adverse change in the terms and conditions of employment.Kocsis v. Multi-Care Management, Inc. (C.A.6, 1996), 97 F.3d 876,885. For example, courts have held that an adverse employment action is evidenced by either a termination of employment or a demotion demonstrated by a decrease in wage or salary or a material loss of benefits. Id. at 885; see, also, Crady v.Liberty Nat. Bank Trust Co. of Ind. (C.A.7, 1993), 993 F.2d 132,136.
However, adverse employment actions are not limited to cases where there has been a termination of employment, loss of benefits or decrease in salary. See Fortner v. State of Kansas
(D. Kan. 1996), 934 F. Supp. 1252, 1266 (indicating that adverse employment actions are not limited to monetary considerations). For example, a job transfer resulting in a less distinguished title or significantly diminished responsibilities can constitute an adverse employment action. Kocsis, at 885, quoting Crady, at 136; see, also, Fortner, at 1266. As well, an employer's decision to transfer an employee to a different department, remove her from her management position, place her under the supervision of the person who took her former management position, assign her less job responsibilities that do not comport with her qualifications and give her negative comments on surprise performance evaluations can be classified as adverse employment actions despite no loss of wages or benefits. Fortner, at 1266; see, also, Collins v. Stateof Ill. (C.A.7, 1987), 830 F.2d 692, 704 (concluding that an employer's decision to remove an employee from her position as library consultant and place her in a position performing reference work where she no longer had her own office, was no longer allowed to have business cards, and was no longer listed in professional publications as a library consultant can be classified as an adverse employment action even though the transfer did not result in a reduction of pay or benefits).
In this case, appellant presents evidence to show that Davidson, a manager for Nationwide, abolished appellant's job-share arrangement. Under the job-sharing program, two employees "share" one full-time position, with each splitting the day or the week but collectively working a full week's time. For example, under the job-sharing arrangement, appellant would have the opportunity to work two days in one five-day workweek, while Hohman would work the other three days.
Additionally, appellant presents evidence demonstrating that she was stripped from her position and title as Training and Service Development Manager. Appellant hired Montgomery, a male in his twenties, as the new service manager. Appellant's new position and title was training and service specialist. Montgomery, who replaced appellant as service manager, became appellant's new immediate supervisor. Previously, appellant reported directly to Davidson.
As well, the evidence demonstrates that Davidson assigned appellant's job duties to younger male employees. Dum, an employee in his twenties, assumed appellant's responsibilities regarding computer-based training. Montgomery assumed some of appellant's other duties, including those concerning the department's annual budget.
Moreover, the evidence shows that Davidson initiated a salary audit of appellant's new position as training specialist. As part of the audit process, appellant answered questionnaires concerning her new position. Davidson changed several of appellant's answers in the questionnaires. As a result of the audit, Nationwide downgraded appellant's position from the "F" pay band to a lower pay band "E," with a salary of approximately $14,000 to a maximum of $30,500 part-time. Appellant appealed the pay band reclassification. However, Nationwide affirmed the pay band reclassification. In analyzing the decision to reclassify the pay band for the training specialist position, we acknowledge that appellant was never actually placed in the lower pay band. However, appellant was never placed in the lower pay band because she no longer held the position as training specialist by the time the decision was affirmed by Nationwide. As noted below, appellant's discrimination claims should not be hindered because she chose to leave her position under Davidson. Thus, the relevant issue on this matter is that appellant was subjected to a decision that was going to place her in a lower pay band that would have essentially placed a lower ceiling on appellant's earning potential.
We find that the above employment decisions constitute material adverse changes in the conditions and terms of appellant's employment. Accordingly, we conclude that appellant was subjected to an adverse employment action by appellees. As such, we find that appellant provides sufficient evidence in support of the second prong of the indirect standard outlined inKohmescher. Therefore, we sustain appellant's first assignment of error.
In so concluding, we acknowledge that appellant applied for and received a transfer to another company within Nationwide. However, appellant's transfer does not change our conclusion that she was subjected to an adverse employment action by appellees. Rather, it can be argued that, by transferring out of Davidson's division, appellant was mitigating her damages.
Although we do not rule specifically on whether an alleged victim of employment discrimination must mitigate his or her damages, we recognize that courts have indicated that plaintiffs alleging to be victims of employment discrimination should not fail to take advantage of any corrective opportunities provided by the employer or to otherwise avoid harm stemming from the alleged discrimination. Burlington Industries, Inc. v.Ellerth (1998), 118 S.Ct. 2257, 2270; see, also, Zerilli, at 317 (recognizing that a victim of employment discrimination should not avoid opportunities to mitigate his or her damages). Therefore, appellant's discrimination claims should not be hindered because she chose to leave her position under Davidson. Indeed, even though appellant mitigated her damages from the alleged discrimination, she asserts that she has lost income and advancement opportunities as a result of appellees' alleged discriminatory actions.
Having concluded that appellant provides sufficient evidence in support of the second prong of the Kohmescher
analysis, we next determine whether appellant satisfies the other three prongs in the analysis. Appellant asserts in her brief that there is sufficient evidence in support of the other three prongs set forth in Kohmescher for her to successfully establish a primafacie case of age and gender discrimination under the indirect method. We agree.
As noted above, in the first prong of the indirect method outlined in Kohmescher, appellant must show that she was a member of a statutorily protected class when she suffered the alleged discrimination. Kohmescher, at 504. Appellant, being a forty-five-year-old female employee, is and was, at all relevant times, within the statutorily protected class at the time she suffered the alleged discrimination. See R.C. 4112.02; see, also, Section 623(A) (1), Title 29, U.S.Code. Accordingly, we conclude that appellant satisfies the first prong of the Kohmescher
analysis.
In the last two prongs of the four-part analysis outlined in Kohmescher, appellant must show that she was replaced by a person not belonging to a protected class and that she was qualified for the position. Kohmescher, at 504. The record shows that appellant was removed from her position as service manager. Montgomery replaced appellant as service manager. The evidence also establishes that many of appellant's duties as service manager were given to both Montgomery and Dum. Moreover, our independent review of the record shows that appellant produces evidence to demonstrate that she was imminently qualified for her position as service manager. Thus, we conclude that appellant presents sufficient evidence in support of the last two prongs of the Kohmescher analysis.
Therefore, because we determine that appellant provides sufficient evidence in support of the four prongs in Kohmescher, we conclude that appellant establishes a prima facie case of age and gender discrimination under the indirect method.
Appellant's second assignment of error concerns whether she produces any direct evidence of discrimination. Lisa Caudill, a former employee of Nationwide, indicates in an affidavit on behalf of appellant that Davidson told her that she did not like the fact that appellant was a part-time employee and, if possible, she would get rid of her. Caudill asserts that Davidson told her that it was a problem to have appellant as a part-time employee and that a male employee would "straighten" the part-time employees out. Additionally, Caudill asserts that, in the process of hiring for the position eventually filled by Montgomery, Davidson told her that she would let appellant go through the interview process for the position, but that she was determined to have a male employee in her new position. Appellant asserts that she may use such statements as direct evidence to support her discrimination claims. We agree.
As noted above, a plaintiff may establish a prima facie
case of discrimination with direct evidence. Gismondi. Direct evidence of discrimination "refers to a method of proof, not a type of evidence." Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, paragraph one of the syllabus. Direct evidence is evidence of any nature such as direct, circumstantial, or statistical evidence of discrimination that establishes that an adverse employment action was more likely than not motivated by discriminatory intent. Id.; see, also, Gismondi.
When relying on the direct evidence standard, a plaintiff may only use discriminatory statements to support his or her claim if there is a causal link or nexus between the discriminatory statement and the alleged prohibited act of discrimination. Byrnes v. LCI Communication Holdings Co. (1996),77 Ohio St.3d 125, 130.[1] Comments that are vague, ambiguous or isolated do not support a finding of discrimination and cannot be used as direct evidence to establish that an adverse employment action was more likely than not motivated by discriminatory intent. Byrnes, at 130.
In analyzing discriminatory comments, courts should consider whether the comments were made by a decision maker or by an agent within the scope of his or her employment, whether the comments were related to the decision making process and whether the comments were proximate in time to the act of discrimination.Cooley v. Carmike Cinemas, Inc. (C.A.6, 1994), 25 F.3d 1325, 1330. Discriminatory comments directed at or relating to the plaintiff have not been found to be vague, ambiguous or isolated and have been found to be sufficient, direct evidence in a discrimination case. See, e.g., Mauzy, at 590 (indicating that because an employer's age related comments were directed at the plaintiff, the comments could be used as direct evidence in plaintiff's discrimination case); see, also, Gismondi (Bowman, J., dissenting) (indicating that age related comments specifically referring to the plaintiff should have been permitted as direct evidence in the discrimination case).
In this case, Davidson made the discriminatory statements asserted by Caudill when she was in a position to have influence over employment decisions con-cerning her division. The comments were directed at appellant and relate to Davidson's decision to remove appellant from her position as service manager. Additionally, the comments were made around the time that Davidson removed appellant from her position as service manager and hired Montgomery as the new service manager. Thus, we conclude that the statements establish that the actions of Davidson were more likely than not motivated by discriminatory intent and constitute direct evidence in this case.
In so concluding, we reject appellees' contention that we may not rely on the affidavits submitted on behalf of appellant because the statements in the affidavits contradict her deposition testimony and merely assert conclusory allegations. We find nothing in the record to support appellees' contention that the statements are contradictory. Moreover, we disagree with the contention that the statements only assert conclusory allegations. The statements do not merely recite a bald assertion that Nationwide discriminated against appellant based on her gender and age; rather, the statements in the affidavits provide specific examples of appellees' conduct in support of appellant's discrimination claims.
Therefore, we conclude that appellant presents direct evidence to support her claims of gender and age discrimination. As such, we conclude that the trial court erred in concluding that appellant has presented no direct evidence of discrimination. Accordingly, we sustain appellant's second assignment of error.
In appellant's third assignment of error, she asserts that the trial court erred in granting Davidson's summary judgment motion regarding appellant's claim of tortious interference with a business opportunity. We disagree.
Ohio recognizes the cause of action for tortious interference with a business relationship when the business relationship at issue is an employment relationship. Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 419. Tortious interference with an employment relationship occurs when one party to the relationship is induced to terminate the relationship by the malicious acts of a third person who is not a party to the relationship at issue. Condon v. Body, Vickers Daniels (1994), 99 Ohio App.3d 12, 22. An employee of a party to the relationship at issue is generally not seen as a third party.Id. Thus, a tortious interference claim generally cannot be brought against an employee of a party to the relationship at issue. Id. In order to maintain a tortious interference claim against an employee of the party to the relationship at issue, the evidence must demon-strate that the employee acted solely in his or her individual capacity. Miller v. Wikel Mfg. Co. (1989),46 Ohio St.3d 76, 78-79. Moreover, a claim of tortious interference cannot be brought against an employee of a party to the relationship at issue unless the employee personally benefits as a result of the interference. Id. at 79.
In this case, appellant asserts that Davidson interfered with the employment relationship between appellant and Nationwide. Appellant allegedly interfered with the employment relationship while she was employed by Nationwide. However, the record shows that Davidson did not act in her individual capacity but, rather, in her official capacity as manager when she allegedly interfered with the employment relationship in this case. Additionally, there is nothing in the record to support a finding that Davidson personally benefited from the alleged interference with the employment relationship between appellant and Nationwide. Accordingly, we conclude that the trial court did not err in granting Davidson's summary judgment motion and overrule appellant's third assignment of error.
In summary, we sustain appellant's first and second assignments of error and overrule appellant's third assignment of error. Therefore, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part; reversed in part and cause remanded.
BRYANT and BOWMAN, JJ., concur.
[1] We have previously acknowledged that the role of Byrnes
in discrimination cases is uncertain because the opinion in Byrnes
is fragmented, with three justices concurring in the lead opinion, two justices concurring separately in the result, and two justices dissenting. Smith v. E.G. Baldwin Assoc., Inc. (1997),119 Ohio App.3d 410, 417. We reaffirm our uncertainty about the role ofByrnes in discrimination cases in light of the Ohio Supreme Court's decision in Petrilla v. Ajax Magnethermic Corp. (1998),82 Ohio St.3d 61, which relies on Mauzy, not Byrnes.